[Civ. No. 16056. Second Dist., Div. Three. June 14, 1948.]

RUDY ZOGARTS, Respondent, v. WALTER E. SMITH et al., Appellants.

JOSEPHINE BARRY, Respondent, v. WALTER E. SMITH et al., Appellants.

J. G. Moser and Richard A. Lavine for Appellants.

Bernbaum & Kleinrock, Francis F. Quittner, Robert H. Shutan and Lyndol L. Young for Respondents.

SHINN, Acting P. J.—Rudy Zogarts and Josephine Barry brought separate actions on promissory notes, dated January 2, 1945, against the makers, Walter E. Smith and Thelma I. Smith. The Zogarts note was for $7,200 and stated "this note is payable only out of eight and one-third per cent (8⅓%) of the net profits of that certain partnership known as Keystone Tool & Supply Company hereafter to be organized by and between Walter E. Smith and Thelma I. Smith, the makers hereof." It is further provided that the profits were to be calculated "as of July 30, 1945, and said percentage paid on account hereof, and the balance, if any, shall be similarly calculated and paid on July 30 of each successive year until the total be paid." The Barry note was for $16,800, payable only out of 19 4/9 per cent of the net profits of the said partnership. It had been given to Emmett D. Barry, now deceased, who, before his death, transferred it to Josephine Barry, his wife. It was alleged in each complaint upon information and belief that on July 30, 1945, defendants had received from the respective percentages of profits, namely, 8⅓ per cent and 19 4/9 per cent, sums of money which were more than sufficient to pay said notes in full, but that during the month of August, 1945, defendants, the sole partners of Keystone Tool &

Supply Company, closed the business of said partnership and liquidated its assets for a sum of money in excess of $100,000 and that the notes had not been paid in whole or in part. Each complaint contained an additional cause of action for money had and received in the amount of each note. Defendants answered, admitting the liquidation of the business and the receipt of more than $100,000 therefor, and alleging that a loss was incurred in the liquidation. They denied the causes of action for money had and received. The cases were consolidated for trial, findings were in favor of plaintiffs, separate judgments were entered and defendants appeal.

There are two approaches to the legal questions involved: the first relates to the question whether there were any profits of the partnership between January 2 and July 1, 1945, and the second is whether, regardless of the profits, the liquidation of the business by defendants obligated them to pay the notes in full. We will first discuss the second proposition, but in doing so will have to refer briefly to the recent history of the company, to the events attending the execution of the notes, and to some extent to the state of the company finances.

In February of 1943, defendants, doing business as Keystone Tool & Supply Company, a partnership, sold a 49 per cent interest to, and formed a new partnership with, Emmett D. Barry, Rudy Zogarts and others, namely, to Barry a 10 per cent interest for $10,000, to Zogarts a 6 per cent interest for $6,000, and to the others various percentages at the same rate. The agreement called for 10 per cent of the respective purchase prices to be paid down and the balances in five equal annual installments, the first payable March 1, 1944. Under date of January 2, 1945, defendants Smith and wife agreed to purchase the interests of Barry, Zogarts and three other partners, the Barry interest for $19,500, and the Zogarts interest for $7,800, and the remaining interests at comparable figures. Barry was to receive and did receive $2,700 and a note for $16,800; Zogarts received $600 and a note for $7,200; and the agreement provided that the balances due the respective sellers "shall be paid from the net profits of Keystone Tool & Supply Company, a co-partnership hereafter to be organized by and between Walter E. Smith and Thelma I. Smith, in the following proportions: EMMETT D. BARRY 19 4/9% . . . RUDY ZOGARTS 8⅓%" etc.

In the agreement and also in the notes it was provided that in calculating the profits Walter E. Smith might first deduct a drawing account of $1,500 a month as an expense of the partnership. The sixth paragraph of the agreement read as follows: "That Walter E. Smith and Thelma I. Smith covenant to assume, pay and satisfy, or cause to be paid and satisfied, all debts and other liabilities of the partnership hereby dissolved, including but not restricted to the claims of any governmental authority on account of renegotiation of governmental contracts, any liabilities accruing to the partnership hereby dissolved or to its members by reason of any violation of the Treasury Department or War Manpower Commission or War Labor Board regulations respecting the employment and payment of employees, and including but not restricted to the claims of Paul Seward and any other former associate or partner of the parties hereto in connection with any former partnership conducted under the name of Keystone Tool & Supply Company, except only such debts or liabilities (if any), as may, at any time or times, have been contracted by the said Emmett D. Barry, Guy Whitaker, Orvile Felt, Rudy Zogarts and Frank Huffman, or any of them, in behalf of the partnership and that have not been entered in or upon the partnership books of account; and the said Emmett D. Barry, Guy Whitaker, Orvile Felt, Rudy Zogarts and Frank Huffman shall each pay and satisfy all of such debts and other liabilities of the partnership not so entered by him, all as more particularly enumerated in paragraph 3 hereof. The said Walter E. Smith and Thelma I. Smith also hereby agree to pay and satisfy, or cause to be paid and satisfied, all personal income tax liability whatsoever incurred by the said Emmett D. Barry, Guy Whitaker, Orvile Felt, Rudy Zogarts and Frank Huffman up to and including the 31st day of December, 1944, for and on account of any earnings, income or profits accruing to the said Emmett D. Barry, Guy Whitaker, Orvile Felt, Rudy Zogarts and Frank Huffman by reason of the business of the said partnership up to and including the said 31st day of December, 1944. That the said Walter E. Smith and Thelma I. Smith covenant at their own cost and expense to hold and save harmless the said Emmett D. Barry, Guy Whitaker, Orvile Felt, Rudy Zogarts and Frank Huffman, and each of them, against any and all liability or claims or damages or expenses (including attorneys' fees and court

costs) that the said Emmett D. Barry, Guy Whitaker, Orvile Felt, Rudy Zogarts and Frank Huffman, and each of them, may sustain, become liable or answerable for, or shall pay for and on account of the aforesaid debts, or the aforesaid other liabilities, or the said income tax liability, all of which are heretofore in this said paragraph assumed as aforesaid by the said Walter E. Smith and Thelma I. Smith.''

Defendants did not pay all the debts of the existing partnership and there was no evidence that they paid any of them, nor as to the amount of funds of the new partnership that were applied on the old debts. Defendants say they did not personally undertake to pay and satisfy the existing obligations, but that they assumed that duty for and on behalf of the partnership which they were to form later. Of course, in either case, plaintiffs' notes were to be paid only out of profits earned by the new partnership, and it is clear that if profits had been earned the notes would have been payable therefrom whether defendants' obligation was personal or on behalf of the partnership. But the case turns upon this very point. It will appear from our discussion of the evidence that although the new partnership might have survived if it had been free from debt, it was not financially able to take care of the heavy obligations of the dissolved partnership, and it failed in the attempt. Mr. Felt, defendants' auditor, who was one of the sellers under the January 2d agreement, testified that the books of the new partnership were set up showing the assumption of current liabilities of $982,000 as of December 31, 1944, ''without giving effect whatever to renegotiation or any suits filed as of that time,'' and book assets of $393,979.48 as of the same date. He also testified that the company did a business of $2,026,666.49 in the first seven months of 1945, paid for goods purchased $1,278,000, suffered a material reduction of inventories, had expenses of $438,794.61, a gross profit from operations of $16,087.04, and net profit for the period of $11,693.29. This testimony was based upon the assumed correctness of a report of operating income and expense made by Arthur Young & Company from an examination of defendants' books, which report was received in evidence as one of plaintiffs' exhibits. The account books were not in court. Mr. Felt also testified that the partnership was operating at a monthly loss of approximately $30,000 and in the seven months sustained a loss of $141,070.45. He did not

undertake to break down or explain these figures. He further testified that the assets of the business were sold at auction for $156,000 in August, 1945, and, that the liquidation resulted in a deficit net worth of $218,000. In arriving at this figure he charged the partnership with various obligations such as renegotiation, wage stabilization, and two suits that were pending at the time and also the balance of the unpaid debts of the old partnership of some $115,000. The Arthur Young & Company figures did not take these factors into consideration.

The evidence pertaining to the matter of operating profits was wholly unsatisfactory. The differences in the conclusions of Mr. Felt and of Arthur Young & Company were not explained. It is clear, however, that the new partnership had insufficient capital with which to carry on its business and at the same time satisfy the creditors of the old partnership. There was no evidence as to the amounts that had been paid on the old debts and the effect that was given to them in the profit and loss calculations made by Mr. Felt or by Arthur Young & Company. If the differences in their respective figures cannot be attributed to opposing theories respecting the matter of the old debts, the record furnishes no basis upon which they can be reconciled. And although there obviously were opposing theories the evidence did not disclose what they were or wherein they differed.

The findings were that the partnership profits earned up to July 30, 1945, were sufficient to pay the notes of plaintiffs from the stipulated percentages applicable thereto. If these findings are supported by the evidence the judgment should be affirmed. But it is impossible to determine from the record whether the evidence supports them. There was a complete failure to explain any of the major items which entered into the calculations of the accountants. For the same reason we cannot hold that the findings as to profits are unsupported, or that defendants proved that they sustained an over-all loss during the period. However, in our discussion of the next point it will be developed that it is immaterial whether the partnership operated at a profit or a loss.

█ If, as the court found to be the case, defendants dissolved their partnership, liquidated its assets and went out of business, they thereby deprived themselves of the ability to pay the notes out of profits and lost that privilege. The general rule is that if the obligor's ability to pay out of

profits is due to the involuntary loss of his business, he is excused from paying, but if it is due to his voluntary acts his duty to pay becomes absolute. The question then is whether the sale of defendants' partnership assets was voluntary, in a legal sense. All the evidence relating to the business operations of the new partnership has a direct bearing upon this question. It was established by the evidence of defendants that the partnership went out of business and was liquidated because it had lost its credit standing and was being pressed by creditors. There was no bankruptcy and no assignment for the benefit of creditors. The partnership succumbed by reason of the loss of credit standing, the insufficiency of its capital, and its heavy debts. As nearly as we can determine from the evidence the unpaid balance of these debts amounted to at least $115,000 at the time of the liquidation. The question then is whether defendants were obligated by their contract to pay and satisfy all debts and other liabilities of the old partnership or merely to have the new partnership assume them. The trial judge construed the contract to mean that defendants were to pay the debts and this, we believe, was the proper construction. Paragraph 6 of the agreement provides for the payment by defendants of said debts and liabilities unequivocally and unconditionally, excepting only undisclosed liabilities of the partnership, if any, that might have been created by the retiring partners. In addition, defendants agreed to pay all personal income tax liabilities of the retiring partners through the year 1944, based upon partnership earnings. The agreement was not merely to hold the retiring partners harmless, against liability or claims, based upon the partnership obligations or income tax liabilities; the concluding part of the paragraph contains such an indemnity agreement. It may be granted, for the purposes of our present discussion, that the new partnership did operate at a loss and that there were actually no earnings to be applied on plaintiffs' notes. But defendants, instead of liquidating the old debts, as they agreed to do, merely allowed the new partnership to assume them, with the result that they could not be and were not met, the creditors closed in and the partnership went out of business. Defendants say that liquidation of the business was involuntary, but it was not involuntary if it was the direct result of the failure of defendants to liquidate

the old debts as they had agreed to do. They cannot be heard to say that the new partnership would not have prospered if it had been allowed to commence business unburdened with the old debts. Defendants argue that it would be unreasonable to believe that they would have undertaken to personally pay the debts of the old partnership and turn all of the assets over to the new partnership with no liabilities whatever. They offered to prove by defendant Walter E. Smith that it was only the intention of defendants to have the debts assumed by the new partnership. The court sustained an objection to this testimony and the ruling in our opinion was proper. It may be that defendants made an improvident agreement, or one that they could not fulfill, but we agree with the trial court that the agreement was unambiguous and that there was no uncertainty as to the obligations which defendants assumed. The inability of the new partnership to earn profits from which to pay plaintiffs' notes must be attributed to the failure of defendants to comply with the terms of their agreement.

There is no question as to the law which governs in this situation. In the early case of *Wolf* v. *Marsh,* 54 Cal. 228, defendant, who had executed a note payable out of the profits of a coal mine, voluntarily sold the mine but was held liable on the note, the court stating (p. 232): ''Before the mines had yielded any profits to the defendant, he sold and conveyed his interest in them to a stranger. By so doing he voluntarily put it out of his power ever to realize any profits from the mines. However great the yield of profits from them might be after that, they could yield none to him. And the principle is elementary, that 'if one voluntarily puts it out of his power to do what he has agreed, he breaks his contract, and is immediately liable to be sued therefor, without demand, even though the time specified for performance has not expired.' (Bishop on Cont. § 690.)''

There are many cases to the same effect, and we think none to the contrary. (*Bagley* v. *Cohen,* 121 Cal. 604 [53 P. 1117]; *Poirier* v. *Gravel,* 88 Cal. 79 [25 P. 962]; *Carter* v. *Rhodes,* 135 Cal. 46 [66 P. 985]; *Grant* v. *Warren,* 31 Cal.App. 453 [160 P. 847].)

Since the retirement from business and liquidation of the partnership consisting of the defendants Smith must be regarded as a consequence of their voluntary acts, and since they thereby rendered impossible the earning of profits by

the partnership from which plaintiffs' notes could have been paid, their obligation to pay the notes was properly determined by the trial court to be absolute.

The facts as related furnish an additional basis of liability. The new partnership operated on a strictly cash basis, as it was obliged to do. The evidence was that it paid its material and labor bills and there was no evidence that it did not meet its other current obligations. It received $156,000 from the sale of its assets or more than enough to pay plaintiffs' notes from the stipulated percentages. Instead of paying the notes the management applied the amount on the other debts which, as we have seen, consisted largely, if not entirely, of the debts of the former partnership. Inasmuch as it was the duty of defendants to pay those debts, the amount received in the liquidation, while not profits in the strict sense, should have been applied first to the payment of plaintiffs' notes.

The judgments are affirmed.

Wood, J., and McComb, J. assigned, concurred.