MALCOLM MacDOWELL & ASSOCIATES, INC., *v.*
ECORSE-LINCOLN PARK BANK.

1. CONTRACTS—IMPOSSIBILITY OF PERFORMANCE.
   He, who, by mutual contract, confers on another a right or imposes a duty, impliedly agrees not to defeat that right or make impossible the performance of that duty by any affirmative acts of his own.

2. SAME—ACTION FOR BREACH—PLEADING.
   Allegation by plaintiff that it and defendant's predecessor had entered into an express contract, performance thereof by plain-

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 12 Am Jur, Contracts, § 386.
[2] 41 Am Jur, Pleading, § 95 *et seq.*
[3] 20 Am Jur, Evidence, § 148.

tiff and breach by defendant with resultant damage to plaintiff were sufficient, if proved, to support a judgment for plaintiff.

3. Same—Breach of Contract—Justification—Burden of Proof. The burden of establishing justification for a defendant's breach of a contract rests upon defendant.

4. Same—Breach of Contract—Justification—Evidence—Mortgage Negotiator's Fees.
    Where defendant bank's contract with plaintiff mortgage negotiator did not limit payment of fees to plaintiff to a portion of fees received from a particular holder of the mortgagee interest and defendant was therefore unable to show justification for its breach of the contract, its liability for the full amount of fees continued, subject to proof as to amount due when action was commenced.

Appeal from Wayne; Maher (Thomas F.), J. Submitted June 7, 1949. (Docket No. 2, Calendar No. 44,276.) Decided September 8, 1949.

Assumpsit by Malcolm MacDowell & Associates, Inc., a Michigan corporation, against Ecorse-Lincoln Park Bank for money due under contract. Judgment for defendant. Plaintiff appeals. Reversed and remanded.

*Robert M. Drysdale,* for plaintiff.

*Dickinson, Wright, Davis, McKean & Cudlip* (*Max L. Veech* and *Harry D. Wise, Jr.,* of counsel), for defendant.

Dethmers, J. Plaintiff's declaration contained 2 counts sounding on express contract, the first of which was abandoned at trial. The second count alleged that in July, 1940, defendant's predecessor bank was an approved mortgagee under the national housing act* and, as such, eligible to sell its mortgages insured by the National Housing Adminis-

_____
* 12 USCA, § 1701 *et seq.*—Reporter.

tration to the Federal National Mortgage Association, hereinafter called FNMA, under a contract between them whereunder the bank retained the right to service the mortgages thus sold to FNMA and receive from the latter a servicing fee of 16⅔ per cent. of the monthly interest payments collected by the bank for FNMA on such mortgages; that the bank entered into an oral agreement with plaintiff by which it was agreed that if plaintiff would initiate, obtain and close such mortgage arrangements, cause them to be assigned to the bank and sold for the bank to FNMA with servicing rights at the above fee retained by the bank, the bank would pay plaintiff as compensation therefor an amount equal to all the monthly servicing fees on said mortgages in excess of $1 per month per mortgage interest payment for the life of the mortgage until such fee no longer exceeded $1 per month; that under the agreement plaintiff, from July, 1940, to January, 1942, obtained a large number of such mortgages for the bank and caused them to be sold to FNMA as above outlined; that the bank in July, 1943, entered into a written agreement with plaintiff confirming his right to such compensation in accord with the above oral agreement; that thereafter defendant acquired the assets and assumed the liabilities of said bank, including said contract liability; that plaintiff was paid compensation accordingly until May 11, 1945, but that since that time defendant has neglected and refused to pay plaintiff its share of such fees. Defendant's answer substantially admits the above allegations except that it alleges that under the agreement payments from the bank to defendant were to cease whenever the bank, for any reason, ceased receiving such fees from FNMA and that plaintiff's compensation was to be limited to the stipulated portion of fees received from FNMA only; further, that after May 11, 1945, the bank no longer received such fees

from FNMA and that the latter was not after that date obligated to pay fees to defendant wherefore defendant was no longer obligated to pay plaintiff.

In evidence is the written agreement of July, 1943. It does not specify, as claimed by defendant, that plaintiff should receive payments out of servicing fees only if such fees are received from FNMA. A fair reading of the agreement leads to the conclusion that plaintiff's right to be compensated out of the servicing fees continues regardless of the source from which defendant receives them.

On trial it developed from the testimony and an exhibit offered by the defendant that on April 7, 1945, FNMA wrote defendant that "The Association (FNMA) again offers to sell to its servicing agents such of the FHA II mortgages they are now servicing for the Association as they desire to purchase." The testimony shows that at that time plaintiff had also become a FHA approved mortgagee; that FNMA would sell the mortgages which the defendant was servicing not only to the bank itself but equally to such other approved mortgagee as the defendant might nominate; that plaintiff at that time made defendant three proposals; (1) that the defendant nominate certain other approved mortgagees, named by plaintiff, who were willing to buy the mortgages and continue the servicing arrangement with and payment of fees to the defendant; (2) that defendant buy the mortgages, do its own servicing and continue the payments to plaintiff; (3) that defendant nominate plaintiff to buy the mortgages, which plaintiff was willing and able to buy. Defendant actually bought the mortgages as of May 11, 1945, and thereafter took the position that it was no longer receiving servicing fees from FNMA and, therefore, owed plaintiff nothing further. From judgment for defendant the plaintiff appeals.

In its opinion the trial court stated:

"There are two questions involved, as the court sees it. First, did the defendant by its action, to-wit, the purchase of these mortgages at the time it did, breach the contract and take from the plaintiff what rights he may have had under such contract? With the following principle of law as quoted in plaintiff's brief, this court has no argument.

" 'He, who, by mutual contract, confers on another a right or imposes a duty, impliedly agrees not to defeat that right or make impossible the performance of that duty by any affirmative acts of his own. 12 Am Jur, § 239, p 767, note 2, citing *Loehr* v. *Dickson*, 141 Wis 332 (124 NW 293, 30 LRA NS 495).'

"But the court further believes that the above quoted principle of law is not applicable to the facts as revealed by the testimony. The testimony in this case revealed that unless the defendant purchased these contracts from the Federal National Mortgage Association, neither party would have benefited from the contract and the contract would have no longer existed, and certainly there is no rule of law which can impose an obligation upon the defendant in favor of the plaintiff simply because the defendant rather than some third party purchased the mortgages in question. Certainly the law does not require the defendant to stand idly by while some third party purchases these contracts and deprives the defendant of whatever benefit it may receive from such contracts."

The above seems to express defendant's position. Defendant's brief in referring to arguments made and authorities cited in plaintiff's brief contains the following:

"Most clearly, it was FNMA's decision to sell the mortgages (and that decision alone) which terminated the right of the parties to continue to service those mortgages for FNMA. *   *   *

"There is no question but that:

"(a) A party to a contract is obligated to use good faith. 12 Am Jur, pp 766, 767; or

"(b) A party to a contract cannot escape his obligations thereunder by placing himself in a position where he is unable to perform. 17 CJS, pp 778, 779, § 328; 6 RCL, § 380, p 1020; *McCreery* v. *Green,* 38 Mich 172, 181; *MacLean* v. *Fitzsimmons,* 80 Mich 336; *Great Lakes & St. L. T. Co.* v. *Scranton Coal Co.* (CCA), 239 F 603; *Baumer* v. *Franklin County Distilling Co.* (CCA), 135 F2d 384; *Uproar Co.* v. *National Broadcasting Co.* (CCA), 81 F2d 373; *Halstead* v. *General Railway Signal Co.,* 51 NYS2d 372; *Price* v. *Spielman Motor Sales Co.,* 261 App Div 626 (26 NYS2d 836); *Vineyard* v. *Martin,* 29 NYS2d 935; *Loehr* v. *Dickson,* 141 Wis 332 (124 NW 293, 30 LRA NS 495); *Lovejoy* v. *Reed,* 302 Ky 153 (193 SW2d 1013); *Li Volsi Construction Co.* v. *Shepard,* 133 Conn 133 (48 A2d 263); *Public Market Company of Portland* v. *City of Portland,* 171 Ore 522 (130 P2d 624, 138 P2d 916); *Pacific Venture Corporation* v. *Huey,* 15 Cal2d 711 (104 P2d 641); *Zogarts* v. *Smith,* 86 Cal App2d 165 (194 P2d 143).

"(c) Where the consideration for a grant of property (such as a mine, invention, copyright, et cetera) lies wholly in the payment of sums based upon the earnings of the property thus transferred, the transferee is under an implied obligation to make such property productive. *Pritchard* v. *McLeod,* 123 CCA 332 (205 F 24); *In re Waterson, Berlin & Snyder Co.* (CCA), 48 F2d 704; *Mechanical Ice Tray Corporation* v. *General Motors Corporation* (CCA), 144 F2d 720; *Kirke La Shelle Co.* v. *Paul Armstrong Co.,* 263 NY 79 (188 NE 163); *Brawley* v. *Crosby Research Foundation,* 73 Cal App 103 (166 P2d 392).

"Such well-established rules cannot be gainsaid, but they are wholly inapplicable to the factual situation in the case at bar. Plaintiff's argument that they are applicable is and must be predicated upon the wholly false assumption that in May, 1945, the defendant was in a position where it could have lawfully insisted that FNMA not sell the mortgages but that it (FNMA) continue to hold them and continue to pay servicing fees under the 'purchasing and

servicing agreement.' As has been stated above, the defendant had no such right to control or dictate to FNMA."

Thus it is defendant's position that it was due to circumstances beyond its control, namely FNMA's decision to sell the mortgages, that defendant no longer received servicing fees and that, therefore, it was no longer obligated to pay plaintiff inasmuch as it was contemplated by the parties when the agreement was entered into that defendant should pay plaintiff only so long as defendant received such fees from FNMA. Regardless of whether it was shown that FNMA intended, at all events, to sell the mortgages, either to its servicing agents or to others (and the point is in dispute), the fallacy of defendant's position lies in the fact that under the agreement defendant was obligated to pay plaintiff regardless of whether the source from which it received servicing fees was FNMA or another, and in the further fact that termination of receipt by it of servicing fees, if it be conceded that there was such termination, was not due solely to reasons beyond its control. There were several alternatives available to defendant, namely; (1) To continue servicing the mortgages for FNMA so long as the latter did not terminate the arrangement; (2) to permit FNMA to sell the mortgages to others, if it so desired, and await the outcome; (3) to nominate plaintiff to buy the mortgages, with no further servicing obligation upon defendant; (4) to nominate approved mortgagees suggested by plaintiff, who were willing and able to buy the mortgages and to continue the servicing arrangement with defendants; (5) to buy the mortgages itself and continue plaintiff's fees and services. Defendant apparently selected the alternative appearing most advantageous to it. In so doing it cannot be said to have acted other than voluntarily. As indicated by the above authorities,

defendant will not be permitted to voluntarily elect to pursue a course calculated to defeat the rights of plaintiff to the very payments which defendant had contracted to make to plaintiff.

Finally, defendant contends that plaintiff may not recover on the theory that defendant had rendered it impossible for the parties to continue to service mortgages for FNMA, because plaintiff did not assert that theory in its declaration. However, plaintiff did declare on an express agreement, alleging performance thereof by itself and breach by defendant with resultant damage to plaintiff. Those allegations, standing alone, were sufficient, if proved, to support a judgment for plaintiff. If there was some justification for defendant's breach, the burden of establishing it rested upon defendant. Defendant appears to offer in justification of its breach the alleged determination of FNMA to sell its mortgages at all events, which, if pursued, defendant claims would have resulted in termination of payment of fees to it by FNMA. As previously indicated, defendant failed to establish any justification for its breach for the reason that the agreement did not limit defendant's liability to payment out of fees only if received from FNMA and for the further reason that the alternatives which were available to defendant preclude a holding that its failure to continue to receive servicing fees, if such failure there be, was due to causes beyond defendant's control and not due to its own voluntary action.

Judgment reversed and cause remanded for the taking of proofs as to the amount due plaintiff to date of commencing of suit and entry of judgment accordingly. Costs of both courts to plaintiff.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, NORTH, BUTZEL, and CARR, JJ., concurred.