[Civ. No. 9905.   Third Dist.   Dec. 7, 1960.]

FRED W. MORRISON, as Executor, etc., Respondent, v.
SAMUEL S. JAKSICK, Appellant.

Pardee & Cady and Vargas, Dillon & Bartlett for Appellant.

Matthew E. Marsh and Coyle E. Bybee for Respondent.

SCHOTTKY, J.—Samuel Jaksick has appealed from a judgment in favor of Fred W. Morrison, as executor of the estate of William I. Morrison, deceased, in an action brought by the executor to recover the sum of $68,998.35, allegedly the balance due on the sale of 6,250 shares of stock of Goose Lake Box Company, a Nevada corporation.

It was alleged in the complaint and found by the court that on August 30, 1947, W. I. Morrison and Lillian Morrison, his wife, sold their 6,250 shares of the common stock of Goose Lake Box Company to defendant Samuel S. Jaksick for the sum of $101,171.87, and received the sum of $4,180.48 on account. The court found also that on September 2, 1947, Jaksick, representing himself to be the seller, and as the seller, agreed to sell to the Loyola University Foundation all of the issued and outstanding stock of the Goose Lake Box Company, including the 6,250 shares purchased by Jaksick from the Morrisons, and the stock of several other corporations. The agreement provided that the foundation would lease the assets of the acquired corporations to an operating company which would pay rent to the foundation, and the foundation would in turn pay the greater portion of the funds to a trustee. These rental payments were to be the source of the funds which would be used to pay for the acquired properties. The agreement also provided that the seller "has full right and authority to sell and transfer all of said shares . . . free and clear of all liens or encumbrances. . . ."

The court found further that in order to assure the payment of the balance of $96,991.39 due the Morrisons on the sale of their stock Jaksick on December 17, 1947, made an assignment to the Morrisons wherein the First National Bank of Reno, as escrow agent under the aforesaid agreement of September 2, 1947, was instructed to pay to the Morrisons 1.4453 per cent of the moneys received by said trustee under the said agree-

ment of September 2, 1947, until the full sum of $96,991.39 was paid. The final paragraph of the assignment stated that it was made to the Morrisons for the sale of their stock.

It appears from the record that after the agreement between Jaksick and the foundation was consummated the foundation leased the property acquired to White Pine Lumber Company, a corporation, in which Jaksick was the controlling stockholder. In the beginning of 1952 the Director of Internal Revenue audited the returns of White Pine and of Jaksick. A large tentative tax liability was indicated as a result of the audit. White Pine and the foundation agreed to impound all further rentals until the tax status of the transaction could be determined.

The Morrisons received a total of $32,173.52 prior to the time Jaksick and the foundation agreed to impound all further rental payments. They received nothing after the agreement went into effect. Mrs. Morrison died in 1954 and Mr. Morrison died in 1956. The executor of his estate brought this action to recover the balance due for the sale of the stock.

A pretrial conference was held and the court determined that two issues remained for decision. These were whether or not Jaksick purchased the Morrison stock outright or was acting as the Morrisons' agent when the stock was sold, and whether or not the plaintiff (the executor) should be precluded from receiving payment because the rental payments had been stopped because of tax problems facing Jaksick. These issues were resolved against Jaksick, the appellant here.

Appellant contends that the court's finding that Jaksick purchased the Morrison stock is not supported by the evidence. Appellant's argument is one as to the weight of conflicting evidence, and we are of course bound by the familiar rule that when the sufficiency of evidence to support a finding is challenged the finding must be sustained if there is substantial evidence to support it. All conflicts in the evidence must be resolved in favor of the prevailing party and the prevailing party is entitled to the benefit of all inferences which may reasonably be drawn from the evidence.

We believe that there is ample evidence that appellant Jaksick purchased the stock from the Morrisons and that he was not acting as their agent in the transaction. There is support for this finding in the statement in the assignment and the statement in the agreement of sale between Jaksick and the foundation. As to the issue of agency, although appellant alleged in his answer that he was acting as the agent of

the Morrisons in the sale of their stock, the record shows the following: "[MR. BYBEE:] Q. Did you ever act for Mr. Morrison in the sale of his stock? A. I did not. . . . Q. Mr. Jaksick, your counsel is here contending that you were acting as the agent for Mr. Morrison in the sale of the Goose Lake Box Company stock to Loyola University Foundation; is that true, or is that not true? A. It ain't true. . . ."

Appellant contends also that if there were a sale from the Morrisons to Jaksick payment was only to be made when the rentals were paid to the trustee and that until funds were in the hands of the trustee no payment could be due the Morrisons. However the record supports the following finding of the trial court:

". . . [T]he Court finds that under said agreement of September 2, 1947, and from January 29, 1953 and until the time of the trial of this action, there have accrued certain rentals and sale proceeds, as aforesaid, included in which is the balance due plaintiff, as aforesaid, without payment of taxes, and that said accrued rentals and sale proceeds have not been disbursed by said defendant White Pine Lumber Co., a corporation, to any person; in this connection, the Court further finds that due to certain income tax difficulties involving the defendants herein, but not involving the plaintiff herein, the defendant University Hill Foundation, a corporation, as successor in interest to the defendant Loyola University Foundation, a corporation, entered into an agreement (Defendants' Exhibits C and D) with the defendant White Pine Lumber Co., a corporation, whereby said defendant White Pine Lumber Co., a corporation, through its agent the defendant Samuel S. Jaksick, is impounding said rentals and sale proceeds rather than paying said money to plaintiff at this time; that said agreement violates the rights of the plaintiff and makes it impossible for plaintiff to receive any part or all of said balance of $68,998.35, and, further, by reason thereof, said defendant, Samuel S. Jaksick, is personally liable to plaintiff for the payment of the whole of said sum."

As stated in Corbin on Contracts, volume 3A, section 767:

"One who unjustly prevents the performance or the happening of a condition of his own promissory duty thereby eliminates it as such a condition. He will not be permitted to take advantage of his own wrong, and to escape from liability for not rendering his promised performance by preventing the happening of the condition on which it was promised . ."

██ And as stated in *Zogarts* v. *Smith*, 86 Cal.App.2d 165, at page 172 [194 P.2d 143] :

". . . In the early case of *Wolf* v. *Marsh*, 54 Cal. 228, defendant, who had executed a note payable out of the profits of a coal mine, voluntarily sold the mine but was held liable on the note, the court stating (p. 232) : 'Before the mines had yielded any profits to the defendant, he sold and conveyed his interest in them to a stranger. By so doing he voluntarily put it out of his power ever to realize any profits from the mines. However great the yield of profits from them might be after that, they could yield none to him. And the principle is elementary, that ''if one voluntarily puts it out of his power to do what he has agreed, he breaks his contract, and is immediately liable to be sued therefor, without demand, even though the time specified for performance has not expired.'' (Bishop on Cont., § 690.) '

''There are many cases to same effect, and we think none to the contrary. . . .''

██ We think the principle enunciated in the foregoing authorities is applicable to the instant case and supports the conclusion of the trial court. The agreement here was between White Pine and the foundation. Jaksick was the controlling stockholder of White Pine. It was his tax difficulties which, at least in part, resulted in the agreement not to pay any rentals to the escrow agent. In this case by acting through his corporation he in reality prevented the condition of performance in the agreement with the Morrisons from coming into effect, and the rule as enunciated by Corbin should be held applicable.

No other points raised require discussion.

██ While the appeal was pending in the instant case, appellant made a motion in this court for leave to produce additional evidence on appeal.

Appellant seeks to include in the record on appeal several letters from the Treasury Department, one of which notifies him of a tax deficiency of $816,872.56, most of which is based on the refusal of the Treasury Department to treat the funds received from the sale of stock to the foundation as receipts from the sale of a capital asset. It appears from the letter that an administrative determination has been made that Jaksick only sold his share of the stock and not all of the stock of the Goose Lake Box Company as the trial court determined. In other words, the Treasury Department inferentially has deter-

mined that the Morrisons sold their stock directly to the foundation.

Appellant also wants to show that a deficiency of over one million dollars has been assessed against the operating company which leased the assets from the foundation because the Treasury Department would not allow a deduction for all the rentals paid to the foundation. The purpose of this letter is to show justification for the refusal to continue payments to the foundation.

█ The purpose of rule 23(b) of the Rules on Appeal and section 956a of the Code of Civil Procedure is to enable an appellate court, in an appropriate case, to terminate litigation by affirmance, or modification and affirmance, of the judgment, or by reversal with directions to enter judgment for appellant if it appears that on no reasonable theory could respondent make a further showing in the trial court. (*People* v. *Benford,* 53 Cal.2d 1 [345 P.2d 928]; *Mabry* v. *Scott,* 51 Cal.App.2d 245 [124 P.2d 659].)

█ The rulings of the Treasury Department are not determinative of the question of whether or not there was a sale of the stock by the Morrisons to Jaksick and are not proper evidence to be considered by the trial court. Likewise, any tax liability of Jaksick could not afford an excuse for withholding the balance due for the stock which the court found upon substantial evidence that he had purchased from the Morrisons. Appellant's motion to produce additional evidence should therefore be denied.

The motion to produce additional evidence is denied and the judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.