STEIN, District Judge,
dissenting:
Fannie Mae’s charter gives the company the power “to sue and to be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal.” 12 U.S.C. § 1723a(a). Unlike the corporate charter at issue in American National Red Cross v. S.G., 505 U.S. 247, 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992), Fannie Mae’s sue-and-be-sued clause contains a proviso — the phrase “of competent jurisdiction.” The majority offers a few potential readings of this phrase, but each of these constructions effectively renders the proviso superfluous. But the phrase “of competent jurisdiction” is not a potted plant; it must mean something. With the proviso included, Fannie Mae’s sue-and-be-sued clause does not confer automatic federal subject matter jurisdiction over any action to which Fannie Mae is a party; jurisdiction must arise from some other source. I therefore respectfully dissent.
I. The Red Cross Default Rule
Congress has used the sue-and-be-sued clauses of federal corporations to achieve multiple goals. Most obviously, these clauses make clear that the federal entity — -as opposed to, for example, its administrator — has the ability to engage in litigation. See Fed. Hous. Admin, v. Burr, 309 U.S. 242, 245, 60 S.Ct. 488, 84 L.Ed. 724 (1940). Congress also uses these clauses to confirm that a federally created entity cannot invoke sovereign immunity. See id. at 249, 60 S.Ct. 488. And Congress may also draft a sue-and-be-sued clause to confer federal jurisdiction upon any suit to which the federal corporation is a party.
A hoary line of U.S. Supreme Court precedent sets forth how Congress may achieve this final goal. The Court first considered this question in Bank of the United States v. Deveaux, 9 U.S. (5 Cranch) 61, 3 L.Ed. 38 (1809), with Chief Justice Marshall writing. The corporation in that case was the first Bank of the United States, and its charter empowered the Bank “to sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in courts of record, or any other place whatsoever.” Id. at 85. The Court concluded that this section merely granted the Bank the capacity *691 to sue. It did not “enlarge the jurisdiction of any particular court.” Id.
Two lines of reasoning supported this holding. First, the Court concluded that automatic access to the federal courts did not necessarily follow from a generic authorization to sue and be sued. See id. at 85-86. Second, a different section of the Bank’s charter explicitly provided for federal jurisdiction in certain suits against the president and directors of the Bank. See id. at 86. “This,” the Chief Justice announced, “evinces the opinion of congress, that the right to sue does not imply a right to sue in the courts of the union, unless it be expressed.” Id.
Congress seemingly responded to the Court’s ruling when it chartered the second Bank of the United States. The relevant section of the second Bank’s charter gave it the right “to sue and be [sued], plead and be impleaded, answer and be answered, defend and be defended, in all State Courts having competent jurisdiction, and in any Circuit Court of the United States.” [1] Osborn v. Bank of the United States, 22 U.S. (9 Wheat.) 738, 817, 6 L.Ed. 204 (1824). The Osborn Court, once again through Chief Justice Marshall, determined that unlike the language at issue in Deveaux, the second Bank’s charter unambiguously conferred federal subject matter jurisdiction. Id. at 817-18.
Deveaux and Osborn together established a default rule for determining whether a federal corporation’s sue-and-be-sued clause confers federal subject matter jurisdiction. As the Supreme Court summarized in American National Red Cross v. S.G., 505 U.S. 247, 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992): “a congressional charter’s ‘sue and be sued’ provision may be read to confer federal court jurisdiction if, but only if, it specifically mentions the federal courts.” Id. at 255, 112 S.Ct. 2465.
The clause at issue in that case gave the Red Cross the power “to sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States.” Id. at 248, 112 S.Ct. 2465. This language went beyond the general authorization of Deveaux. See id. at 256-57, 112 S.Ct. 2465. In addition, the Red Cross’s clause was “in all relevant respects identical” to a charter provision that the Court held to confer jurisdiction in D’Oench, Duhme & Co. v. Federal Deposit Insurance Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). See Red Cross, 505 U.S. at 257, 112 S.Ct. 2465. Importantly, Congress amended' the relevant provision of the Red Cross’s charter just five years after D’Oench was decided. See id. at 260, 112 S.Ct. 2465. The plain language and statutory history together compelled the conclusion that the Red Cross’s charter gave federal courts subject matter jurisdiction over suits to which the company was a party.
Red Cross provides the Supreme Court’s most recent pronouncement on the jurisdictional implications of federal sue-and-be-sued clauses. However, Red Cross did not announce any new rule of law. See id. at 255-57, 112 S.Ct. 2465. Rather, the Court simply restated the “rule established” in the Court’s twin decisions of Osborn and Deveaux. Id. at 257, 112 S.Ct. 2465. Red Cross thus did not announce a magic-words test that ends all inquiry the moment we come across the word “federal”; it restated a default rule to assist Congress and the courts in writing and interpreting sue-and-be-sued clauses.
*692 Recognizing that the rule in Red Cross is a default has an important implication— it means that Congress can draft exceptions to the rule. When Congress creates corporations, it “has full authority to make such restrictions on the ‘sue and be sued’ clause as seem to it appropriate or necessary.” Fed. Hous. Admin, v. Burr, 309 U.S. 242, 249, 60 S.Ct. 488, 84 L.Ed. 724 (1940); cf. Fed. Sav. & Loan Ins. Corp. v. Ticktin, 490 U.S. 82, 86-87 & n. 5, 109 S.Ct. 1626, 104 L.Ed.2d 73 (1989) (Congress can write provisos that limit “broad grant[s] of federal jurisdiction.”). Counsel for Fannie Mae nicely summarized this point at oral argument: “If Congress says you can sue or be sued in federal court, that is at least a profoundly strong default rule ... and you’d have to find something else in the statute that says even though we want you to sue in federal court, we don’t really mean it.” Oral Arg. Rec. at 28:58.
Red Cross did not tie Congress’ hands, preventing it from crafting sue-and-be-sued clauses as it deems fit. We cannot ignore the “of competent jurisdiction” proviso; we must determine what it means. The Red Cross default rule gives us the starting point for our analysis of Fannie Mae’s sue-and-be-sued clause. The Supreme Court’s application of the default rule over the past two centuries defines the interpretive tools for our analysis. Using this approach, Fannie Mae’s sue-and-be-sued clause allows for only one reading — a court must have an independent basis of jurisdiction to hear a suit involving that company.
II. The Plain Language of Fannie Mae’s Sue-And-Be-Sued Clause
As noted, Fannie Mae’s charter grants the company the power “to sue and to be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal.” 12 U.S.C. § 1723a(a). Absent the “of competent jurisdiction” proviso, this clause would clearly confer jurisdiction on the federal courts. See D’Oench, 315 U.S. at 455, 62 S.Ct. 676. The true question before this Court, then, is what the proviso means. On its face, the phrase “of competent jurisdiction” “look[s] to outside sources of jurisdictional authority.” Califano v. Sanders, 430 U.S. 99, 106 n. 6, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Wdien “of competent jurisdiction” modifies “State” courts, the proviso instructs us to look for a jurisdictional hook in that state’s law. See Osborn, 22 U.S. (9 Wheat.) at 817. The proviso performs the same function when it modifies “Federal” courts. No court — state or federal — is competent to hear a suit involving Fannie Mae unless it has subject matter jurisdiction by some means other than Fannie Mae’s sue-and-be-sued clause.
Congress has utilized substantively identical language in other sue-and-be-sued clauses, and the courts of appeals have overwhelmingly agreed that an “of competent jurisdiction” proviso requires an alternative basis of jurisdiction. Fannie Mae has directed our attention in particular to the sue-and-be-sued provision that authorizes the Administrator of the Federal Housing Administration “to sue and be sued in any court of competent jurisdiction, State or Federal.” 12 U.S.C. § 1702. A long line of cases has held that this statute does not confer federal jurisdiction. See C.H. Sanders Co. v. BHAP Hous. Dev. Fund Co., 903 F.2d 114, 118 (2d Cir.1990); Lomas & Nettleton Co. v. Pierce, 636 F.2d 971, 973 (5th Cir.1981); Bor-Son Bldg. Corp. v. Heller, 572 F.2d 174, 181 (8th Cir.1978); Lindy v. Lynn, 501 F.2d 1367, 1368 (3d Cir.1974). This very Circuit has followed the non-jurisdictional interpretation of the statute, albeit in dicta. See Munoz v. Small Business Admin., 644 F.2d 1361, 1365 n. 3 (9th Cir.1981). The *693 majority criticizes my reliance on these cases because they were handed down prior to Red Cross, which, as set forth above, announced no new rule of law. But if the majority seeks post-Red Cross cases that agree with this dissent that an independent basis is needed to support federal subject matter jurisdiction for Fannie Mae, we need only look to the numerous district court opinions in this Circuit that the majority overrules with its decision. As district judge Dean Pregerson recently summarized, “courts in this circuit appear to have uniformly reached the [] conclusion” that Fannie Mae’s charter does not confer federal subject matter jurisdiction. Fed. Nat’l Mortgage Ass’n v. Moreno, No. 14-CV-2984, 2014 WL 1922955, at *2 (C.D.Cal. May 14, 2014) (collecting cases). Judge Pregerson concurred with that significant consensus.[2] See id.
In sum, when Congress has included “of competent jurisdiction” provisos' in sue- and-be-sued clauses, courts have honored Congress’ intent and ruled these clauses to not confer subject matter jurisdiction. Fannie Mae’s sue-and-be-sued clause should be no different.
The majority offers two alternative readings for the “of competent jurisdiction” proviso. Neither is persuasive. First, the majority suggests that the proviso was part of Congress’ drive to modernize the U.S.Code in the mid-20th century. During this period, law and equity were merged in the federal courts and in a majority of the states. See Fed.R.Civ.P. 2. The merger largely rendered references to “courts of law and equity” into historical curiosities. As the majority correctly points out, when Congress amended title 28 of the U.S.Code, it cleaned up these references in the sections that confer jurisdiction on the district courts. Congress went about its task expeditiously — it simply deleted references to courts of law or equity.[3] Congress did not replace these phrases with new references to “courts of *694 competent jurisdiction” for a singularly valid reason. As explained above, the phrase “of competent jurisdiction” signals that the section containing that phrase will not also harbor a grant of jurisdiction. It would make no sense to include this proviso in a section designed to confer jurisdiction.
Next, the majority offers that the “of competent jurisdiction” proviso could be read to emphasize that state and federal courts of specialized jurisdiction need not hear cases involving Fannie Mae purely on the basis of its sue-and-be-sued clause. There are two flies in the ointment of this reading.
First, the majority relies on the Osborn Court’s interpretation of the second Bank’s charter, which authorized the Bank to sue “in all State Courts having competent jurisdiction.” Osborn, 22 U.S. (9 Wheat.) at 817. According to the majority, this phrase ensured that “a state court with narrow, specialized jurisdiction” was not required to hear any case involving the Bank. Majority Op. at 686. This is an unduly narrow reading of the clause. In fact, the second Bank’s charter made clear that no state court was required to hear a suit involving the Bank, unless that court had a free-standing basis for jurisdiction. This reading accords with the understood relationship between Congress and the state courts around the time the second Bank was chartered: “I hold it to be perfectly clear, that Congress cannot confer jurisdiction upon any Courts, but such as exist under the constitution and laws of the United States, although the State Courts may exercise jurisdiction on cases authorized by the laws of the State, and not prohibited by the exclusive jurisdiction of the federal Courts.” Houston v. Moore, 18 U.S. (5 Wheat.) 1, 27-28, 5 L.Ed. 19 (1820) (emphasis added). The “of competent jurisdiction” proviso serves precisely the same purpose in Fannie Mae’s charter — the only difference is that the proviso applies to the courts of the states and the federal government.
Second, Red Cross forecloses the majority’s construction of the “of competent jurisdiction” proviso. The Red Cross’s charter gave that organization the power “to sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States.” Red Cross, 505 U.S. at 248, 112 S.Ct. 2465. In his dissenting opinion, Justice Scalia argued that if this sue-and-be-sued clause must confer federal jurisdiction, it must confer jurisdiction on all the federal courts, including those of specialized jurisdiction. See id. at 267, 112 S.Ct. 2465 (Scalia, J., dissenting). The Court rejected this approach and held that the Red Cross’s charter confers automatic jurisdiction only in the district courts — today, the sole federal courts of broad original jurisdiction. See id. at 256 n. 8, 112 S.Ct. 2465 (majority opinion). Red Cross therefore demonstrates that Congress does not need an “of competent jurisdiction” proviso to ensure that Fannie Mae will not foist itself upon federal courts of specialized jurisdiction. The majority’s reading of the proviso would render it entirely superfluous.
The majority claims that Testa v. Katt, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947), provides an historical backdrop for its interpretation of the sue-and-be-sued clause. This is an interesting hypothetical, but one without relevance to the issue presented in this case. Testa restated the uncontroversial proposition that state courts cannot refuse to hear federal causes of action when those courts entertain similar state law causes of action. See id. at 394, 67 S.Ct. 810; see also, e.g., Haywood v. Drown, 556 U.S. 729, 735-36, 129 S.Ct. 2108, 173 L.Ed.2d 920 (2009). But Congress did not give Fannie Mae a proprie *695 tary cause of action when it amended the company’s charter in 1954. When Fannie Mae sues or is sued, the cause of action must derive from a separate realm of federal law or, more likely, from state law. See, e.g., Welch v. Burton, 221 Ark. 173, 252 S.W.2d 411, 413 (1952) (Fannie Mae joined as defendant in quiet title action); Malcolm MacDowell & Assocs. v. Ecorse-Lincoln Park Bank, 325 Mich. 591, 38 N.W.2d 921, 921-22 (1949) (Fannie Mae sued for breach of a mortgage-related contract). Testa does not evidence a midcen-tury climate of fear that federal entities would be denied access to state courts, especially in cases touching on state property and mortgage law.
The Red Cross default rule does not allow us to ignore the “of competent jurisdiction” proviso — it must mean something. The only natural reading of this phrase instructs us to look for a source of jurisdiction outside of Fannie Mae’s sue-and-be-sued clause.
III. The Legislative Context of Fannie Mae’s Sue-And-Be-Sued Clause
Looking beyond the plain language of Fannie Mae’s sue-and-be-sued clause, the history of Congress’ amendments to this statute reinforces the conclusion that the clause does not confer federal subject matter jurisdiction.
A. The 1954 amendment
Prior to 1954, Fannie Mae’s sue-and-be-sued clause gave it the power “[t]o sue and be sued, complain and defend, in any court of law or equity, State or Federal.” Nat’l Housing Act, ch. 847, § 301(c)(3), 48 Stat. 1246, 1253 (1934). This clause inarguably gave Fannie Mae access to the federal courts. See D’Oench, 315 U.S. at 455, 62 S.Ct. 676. But knowing this, Congress in 1954 struck the language “in any court of law or equity,” and replaced it with “in any court of competent jurisdiction.” It is a basic tenet of statutory interpretation that “[w]hen Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect.” Stone v. I.N.S., 514 U.S. 386, 397, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995). Indeed, the Supreme Court in Red Cross reinforced the importance of this canon in the context of sue-and-be-sued clauses. See Red Cross, 505 U.S. at 260, 112 S.Ct. 2465. Congress thus emphasized the non-jurisdietional implications of the “of competent jurisdiction” proviso by adding it to a previously jurisdiction-conferring statute.
Congress’ motivation and method in amending Fannie Mae’s charter have proved obscure to some. See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust ex rel. Fed. Nat’l Mortg. Ass’n v. Raines, 534 F.3d 779, 786-87 (D.C.Cir.2008). It is true that the legislative history behind the 1954 amendment does not expressly discuss the addition of the “of competent jurisdiction” proviso. But the legislative history does reveal that Congress intended to reduce the footprint of the federal government in the national housing market. Congress’ amendment to Fannie Mae’s sue-and-be-sued clause was simply one facet of this overriding purpose.
The 1954 Act was prompted by President Eisenhower’s desire to “develop a new and revitalized housing program better adapted to current requirements, which would clearly identify the proper role of the Federal Government in the housing field and outline more economical and effective means for improving the housing conditions of our people.” H.R.Rep. No. 83-1429, at 1 (1954). As the House Committee on Banking and Currency put it, one of the Act’s “basic objectives” was “[sjubstituting private sources of funds for Government expenditures *696 whenever possible, especially in connection with the provision of a secondary market for home mortgages.” Id. at 2.
The House passed H.R. 7839 — a version of the 1954 Act that would dramatically remake Fannie Mae. Pursuant to H.R. 7839, Fannie Mae would be dissolved and rechartered “with substantial changes in its authority and with provision for the eventual substitution of private capital for Government investment in its secondary market operations.” H.R.Rep. No. 83-1429, at 18. The new Fannie Mae would issue capital stock to the Secretary of the Treasury and convertible bonds to private investors. See id. at 18-19. Once the capital stock owned by the Secretary was retired, the convertible bonds could be exchanged for common stock and Fannie Mae could issue more common stock directly to the public. See id. at 18-19, 43-45. Notably for our purposes, the House bill included the “of competent jurisdiction” proviso in Fannie Mae’s amended corporate charter. See id. at 89-90.
The Senate Committee on Banking and Currency strongly disagreed with the House’s treatment of Fannie Mae. That Committee did not believe that “the testimony and facts presented to it warranted] the sweeping action contained in” the House bill. S.Rep. No. 83-1472, at 33 (1954), 1954 U.S.C.C.A.N. 2723. The Senate proposed only minor changes to Fannie Mae’s then-existing corporate authority. See id. at 74-75. Importantly, the Senate version of H.R. 7839 did not include the “of competent jurisdiction” proviso. See id. at 121.
The conference committee roundly rejected the Senate’s approach and adopted the House’s version of the Act. See Conf. Rep. No. 83-2271, at 25-35 (1954). The final version of the law included the Treasury-to-private capitalization path. See Housing Act of 1954, Pub.L. No. 83-560, § 201, 68 Stat. 590, 613-15. It also provided that once this capital conversion was complete, Fannie Mae’s administrative parent would request that Congress turn Fannie Mae over entirely to its private owners. See id., 68 Stat. at 615. It also included, as we know, the “of competent jurisdiction” proviso.[4] See id. at 620.
In sum, the non-jurisdictional reading of the 1954 sue-and-be-sued clause meshes comfortably with Congress’ overall intention when enacting the Housing Act of 1954. Congress intended to put Fannie Mae on a path that would eventually take the federal government out of the secondary mortgage market. As part of this process, Congress removed Fannie Mae’s jurisdiction-granting sue-and-be-sued clause and elected the default option for federally chartered corporations — that they do not automatically gain access to the federal courts, unless the government owns more than half of the corporation’s capital stock.[5] After Congress passed the *697 1954 Act, Fannie Mae would still have access to the federal courts purely on the basis of its federal charter until the Treasury disentangled itself from the corporation. At that point, the government would no longer own more than half of the corporation’s capital stock, Fannie Mae’s administrator would request that the company be completely turned over to its private owners, and Fannie Mae would be in the position of every other federally chartered corporation that does not receive the special treatment of a jurisdiction-conferring sue-and-be-sued clause. See Paul E. Lund, Federally Chartered Corporations and Federal Jurisdiction, 36 Fla. St. U.L.Rev. 317, 334-35 (2009) (calling the number of corporations with automatic access to federal courts through their sue- and-be-sued clauses “a select group” and a “handful”).
Although Congress did not speak specifically to its intent in amending Fannie Mae’s sue-and-be-sued clause, it did not have to. Congress’ intent for the Housing Act of 1954 — to place the government and Fannie Mae on paths that would ultimately diverge — was clear. The amendment to Fannie Mae’s sue-and-be-sued clause was part and parcel of this overarching intendment.
B. The 1974 amendment
Congress returned to Fannie Mae’s corporate charter in 1974 to once again amend the company’s ability to gain access to the federal courts. This amendment did not touch on the sue-and-be-sued clause, but it affects our interpretation of that portion of Fannie Mae’s charter. If a separate portion of Fannie Mae’s charter explicitly speaks to jurisdiction, this militates against a jurisdictional reading of the sue-and-be-sued clause. See Deveaux, 9 U.S. (5 Cranch) at 86.
Prior to 1974, both Fannie Mae and its sister corporation, Ginnie Mae (formally titled the Government National Mortgage Corporation), were required to “maintain [their] principal office in the District of Columbia and shall be deemed, for purposes of venue in civil actions, to be a resident thereof.” Housing and Urban Development Act of 1968, Pub.L. No. 90-448, § 802(c)(3), 82 Stat. 476, 536, 537. Then, in the Housing and Community Development Act of 1974, Congress amended this clause to provide that Fannie Mae “shall be deemed, for purposes of jurisdiction and venue in civil actions, to be a District of Columbia corporation.” Pub.L. No. 93-383, tit. VIII, § 806(b), 88 Stat. 633, 727 (codified at 12 U.S.C. § 1717(a)(2)(B)) (emphasis added). Congress did not make a parallel amendment to the corporate charter of Ginnie Mae, which had no capital stock and was “in the Department of Housing and Urban Development.” 12 U.S.C. § 1717(a)(2)(A).
By adding the term “jurisdiction,” Congress intended to allow Fannie Mae to access the federal courts via diversity jurisdiction pursuant to 28 U.S.C. § 1332. Section 1332 deems a corporation a citizen “of every State ... by which it has been incorporated and of the State ... where it has its principal place of business.” 28 U.S.C. § 1332(c)(1). But federally chartered corporations are not “citizens” of any “State” for the purposes of section 1332. See Wachovia Bank v. Schmidt, 546 U.S. 303, 306, 126 S.Ct. 941, 163 L.Ed.2d 797 (2006); Bankers’ Trust Co. v. Tex. & P. Ry. Co., 241 U.S. 295, 309-10, 36 S.Ct. 569, 60 L.Ed. 1010 (1916); Hancock Fin. Corp. v. Fed. Sav. & Loan Ins. Corp., 492 F.2d *698 1325, 1329 & n. 4 (9th Cir.1974). Recognizing this fact, Congress has filled the statutory gap on a few occasions by deeming specific corporations or classes of corporations to be citizens of the states in which they are located. See Act of Mar. 3, 1887, ch. 373, § 4, 24 Stat. 552, 554 (codified as amended at 28 U.S.C. § 1348) (“[A]ll national banking associations established under the laws of the United States shall, for the purposes of all actions by or against them ... be deemed citizens of the States in which they are respectively located ... .”); see also 7 U.S.C. § 941(c) (“The telephone bank ... shall, for the purposes of jurisdiction and venue, be deemed a citizen and resident of the District of Columbia.”). The 1974 amendment to Fannie Mae’s charter is another example of this type of statute.
Fannie Mae would have no use for diversity jurisdiction if it could enter the federal courts pursuant to its sue-and-be-sued clause. The latter basis of jurisdiction does not contain an amount-in-controversy requirement, a complete-diversity requirement, or a forum-defendant rule. It is also not limited by the well-pleaded complaint rule. See Red Cross, 505 U.S. at 258, 112 S.Ct. 2465. If Fannie Mae’s sue- and-be-sued clause confers subject matter jurisdiction, then Congress amended the company’s charter in 1974 for no reason whatsoever. See Hancock, 492 F.2d at 1328-29. The absence of any change to Ginnie Mae’s charter confirms this interpretation of the Fannie Mae amendment. Ginnie Mae had no use for diversity jurisdiction whatsoever — it had plenary access to the federal courts as an agency of the federal government. See 28 U.S.C. §§ 1345, 1346.
The majority believes that the word “jurisdiction” in the 1974 amendment refers only to personal jurisdiction, not subject matter jurisdiction. A natural reading of the statute does not lead to this result. When Congress dubbed Fannie Mae “a District of Columbia corporation,” it employed a phrase with a universally understood meaning. Just as “a Delaware corporation” is an entity incorporated under the laws of that state, see, e.g., Eldridge v. Richfield Oil Corp., 364 F.2d 909, 909 (9th Cir.1966), “a District of Columbia corporation” is one that has been incorporated under the laws of the District. Section 1332 fills in the rest, making that District of Columbia corporation a District citizen, and therefore eligible for diversity jurisdiction. See 28 U.S.C. § 1332(c)(1), (e). Congress’ designation of the District as the effective place of Fannie Mae’s incorporation also makes Fannie Mae subject to general jurisdiction — that is, personal jurisdiction — in the District’s courts. See Daimler AG v. Bauman, — U.S. -, 134 S.Ct. 746, 760, 187 L.Ed.2d 624 (2014). But the 1974 amendment cannot be cab-ined so that it legislates personal jurisdiction, and personal jurisdiction alone.
The plain language of the 1974 amendment shows that Congress intended to give Fannie Mae access to the federal courts by diversity jurisdiction. Since we cannot presume that Congress amends statutes with frivolous intent, it follows that Fannie Mae must have needed this jurisdictional hook. Congress’ pronouncement confirms that Fannie Mae’s sue-and-be-sued clause does not confer federal jurisdiction.
IV. Conclusion
The Supreme Court’s cases interpreting sue-and-be-sued clauses, culminating with Red Cross, have defined the tool box we are to use in examining Fannie Mae’s charter. All of the interpretive techniques point in a single direction — that the “of competent jurisdiction” proviso added to Fannie Mae’s charter demands that the company come up with some point of entry *699 to the federal courts other than its status as a federally chartered corporation. I respectfully dissent.

. At the time the second Bank was chartered, the circuit courts had both original and appellate jurisdiction over certain civil actions. See Am. Nat’l Red Cross v. S.G., 505 U.S. 247, 256 n. 8, 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992); Richard H. Fallon, Jr. et al., Hart and Wechsler’s The Federal Courts and the Federal System 22, 30 n.65 (6th ed.2009).

. The district courts in our circuit are not alone in their consensus that Fannie Mae’s sue-and-be-sued clause does not confer federal subject matter jurisdiction. Indeed, this appears to be the position of the majority of those district courts in all circuits that have written on this issue. See Warren v. Fed. Nat’l Mortg. Ass’n, No. 14-CV-0784, -— F.Supp.3d -, 2014 WL 4548638 (N.D.Tex. Sept. 15, 2014); Kennedy v. Fed. Nat’l Mortg. Ass'n, No. 13-CV-203, 2014 WL 3905593, at *5-6 (E.D.N.C. Aug. 11, 2014); Fed. Nat’l Mortg. Ass'n v. Davis, 963 F.Supp.2d 532, 537-43 (E.D.Va.2013); Carter v. Watkins, No. 12-CV-2813, 2013 WL 2139504, at *3-4 (D.Md. May 14, 2013); Fed. Home Loan Bank of Indianapolis v. Banc of Am. Mortg. Sec., Inc., No. 10-CV-1463, 2011 WL 2133539, at *1-2 (S.D.Ind. May 25, 2011) (construing the FHLB’s substantively identical sue-and-be-sued clause); Fed. Home Loan Bank of Atlanta v. Countrywide Sec. Corp., No. 11-CV-489, 2011 WL 1598944, at *3 (N.D.Ga. Apr. 22, 2011) (construing FHLB charter); Fed. Home Loan Bank of Chicago v. Banc of Am. Funding Corp., 760 F.Supp.2d 807, 809-10 (N.D.Ill.2011) (construing FHLB charter); Rincon Del Sol, LLC v. Lloyd’s of London, 709 F.Supp.2d 517, 522-25 (S.D.Tex.2010); Knuckles v. RBMG, Inc., 481 F.Supp.2d 559, 562-65 (S.D.W.Va.2007). Those district courts that have sided with the majority have done so without an extended discussion of this question. See Fed. Home Loan Bank of Boston v. Ally Fin., Inc., No. 11-CV-10952, 2012 WL 769731, at *1-3 (D.Mass. Mar. 9, 2012); In re Fannie Mae 2008 Sec. Litig., No. 08 Civ. 7831, 2009 WL 4067266, at *3 (S.D.N.Y. Nov. 24, 2009); Grun v. Countrywide Home Loans, Inc., No. 03-CV-0141, 2004 WL 1509088, at *2 (W.D.Tex. July 1, 2004).

. Compare 28 U.S.C. § 41(1) (1946), with Act of June 25, 1948, ch. 646, §§ 1331, 1332, 1345, 62 Stat. 869, 930, 933 (deleting reference to "suits of a civil nature, at common law or in equity”); compare 28 U.S.C. § 41(7), (14) (1946), with ch. 646, §§ 1338, 1343, 62 Stat. at 931-32 (deleting references to "suits at law or in equity”); and compare 28 U.S.C. § 41(20) (1946), with ch. 646, § 1346, 62 Stat. at 933 (deleting reference to "a court of law, equity, or admiralty”).

. The 1954 Act inserted an “of competent jurisdiction” proviso into the sue-and-be-sued clauses of two other entities — the Federal Savings and Loan Insurance Corporation and the Home Loan Bank Board (in the context of Board actions to enforce its regulations of savings and loan institutions). See Pub.L. No. 83-560, §§ 501(1), 503(2), 68 Stat. at 633, 635. Congress made the interpretive task concerning these two clauses easier, since it did not include a specific reference to federal courts. Neither of these sue-and-be-sued clauses confers automatic federal jurisdiction.

. As a consequence of the Supreme Court's decision in Osborn, "a suit by or against a corporation of the United States is a suit arising under the laws of the United States.” Pac. R.R. Removal Cases, 115 U.S. 1, 11, 5 S.Ct. 1113, 29 L.Ed. 319 (1885) (citing Osborn, 22 U.S. (9 Wheat.) at 817-28). The district courts thus have jurisdiction over suits by or against federally chartered corporations under 28 U.S.C. § 1331, at least in theory. See id. at 14, 5 S.Ct. 1113; see also Red Cross, 505 U.S. at 251, 112 S.Ct. 2465. *697 In 1925, Congress limited this ground of jurisdiction so that only corporations where the government owns more than half of the capital stock could benefit from it. See Act of Feb. 13, 1925, ch. 229, § 12, 43 Stat. 936, 941 (codified as amended at 28 U.S.C. § 1349).