The **LOMAS & NETTLETON COMPANY**, Plaintiff-Appellant,

v.

**Samuel R. PIERCE, Jr., Secretary, Department of Housing and Urban Development et al., Defendants-Appellees.**

No. 79–3562.

United States Court of Appeals,
Fifth Circuit.

Unit A

Feb. 9, 1981.

Rehearing Denied March 5, 1981.

Brice & Barron, W. S. Barron, Jr., Dallas, Tex., for plaintiff-appellant.

William Kanter, John F. Cordes, Appellate Staff, Civil Div., Dept. of Justice, Washington, D. C., for defendants-appellees.

Before AINSWORTH, CHARLES CLARK and WILLIAMS, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellant, The Lomas & Nettleton Company, brought this suit in the amount of $2,500,000 damages against the Government National Mortgage Association (GNMA), its president, and the Secretary of Housing and Urban Development (HUD). The claim is based on an alleged breach of contract by defendants involving twenty-eight option applications for the purchase of mortgages being offered for sale by GNMA. The district court ruled that since any judgment sought by appellant must be satisfied from the federal treasury, the suit was actually a claim against the United States. Accordingly, the court dismissed the suit, holding that waiver of sovereign immunity is available only under the Tucker Act, which requires that the action be brought exclusively in the Court of Claims, 28 U.S.C. §§ 1346, 1491. We agree.

GNMA is a federal agency organized under the Department of Housing and Urban Development. 12 U.S.C. § 1717(a)(2)(A). As one of its services, GNMA provides for a secondary mortgage market for selected types of federally insured mortgages under a system known as Special Assistance Functions. 12 U.S.C. § 1720. Under this program, GNMA purchases and sells the mortgages in order to assist the financing of home mortgages. See 12 U.S.C. § 1716.

Mortgages purchased pursuant to these programs are normally sold by auction to FHA-approved mortgagees such as appellant. However, because of the expectation of a soft market, GNMA initiated a program in the summer of 1975 to sell mortgages on a first-come, first-served basis at a purchase price set by GNMA. This program provided for the immediate sale of the project mortgages or the sale of an option giving the option holder the right to purchase the mortgages at a specified price any time during a sixty-day period following the acceptance by GNMA of the option offer. Appellant offered to buy twenty-eight of these options on federally insured project mortgages having a total face value of $56,747,925 at a price of $75.34 per $100 face value of any such mortgage.

Appellant alleges that GNMA, through its representative, the Federal National Mortgage Association (FNMA), orally accepted appellant's offer. However, the following day FNMA declined delivery of the options, explaining that GNMA had cancelled the entire set price program. Appellant filed this action to recover the amount by which the fair market value of the mortgages increased during the option period.[1] The issue before the court, however, is not appellant's claim for breach of contract. Rather, we must decide whether, as a matter of law, the suit is actually against the United States, as the district court held, and therefore precluded from disposition in the district court by the doctrine of sovereign immunity.

The district court agreed with respondents' contention that the Court of Claims is the only court with jurisdiction to hear appellant's claim. The court found that since the plaintiff's complaint is in actuality against the United States, sounds in contract, and alleges damages in excess of $10,000, the Tucker Act provides the only applicable statutory waiver of sovereign immunity. 28 U.S.C. §§ 1346, 1491.

The court rejected appellant's contention that it had jurisdiction by virtue of 12 U.S.C. § 1702, which authorizes the Secretary of HUD "to sue and be sued" in the district court.[2] It concluded that section

---

1. Appellant contends the market value of the mortgages increased to more than $80 per $100 of the face value of the mortgage during the sixty-day option period.

2. 12 U.S.C. § 1702 states in pertinent part as follows:

1702 was a waiver of HUD's immunity, but not of the immunity of the United States generally.[3] Therefore, section 1702 was not applicable since the instant action, while nominally against the Secretary of HUD and GNMA, was in reality against the United States.

■ Any uncertainty in this circuit on the subject has recently been resolved. In *Industrial Indemnity, Inc. v. Landrieu*, 615 F.2d 644 (5th Cir. 1980), we held that a contractor's assignee could bring suit in the district court against the Secretary of HUD to recover construction retainages withheld from the contractor on construction of a low income housing project, the mortgage for which HUD had insured. *Industrial Indemnity* makes it clear that section 1702 is a waiver of the immunity of HUD only, and that the section is neither a grant of jurisdiction nor a waiver of the immunity of the United States generally. 615 F.2d at 646. In *Industrial Indemnity*, we held that the crux of the matter is whether the judgment sought would have to be satisfied from the United States Treasury.[4] The program involved in that case was funded from the General Insurance Fund, a specific mortgage insurance fund created in 1965 within the control of HUD. 12 U.S.C. § 1735c. Accordingly, we decided that the action was against the Secretary of HUD and not in reality against the United States since a judgment could be "paid out of money in the General Insurance fund that is a separate fund in the control and possession of the Secretary." 615 F.2d at 646.

There is no such "separate fund" in the control and possession of the Secretary of HUD or GNMA from which a judgment could be satisfied in the present case and there is no special insurance fund that has a separate existence from the normal agency budget. GNMA derives its funding for mortgage purchases from interest-bearing loans from the United States Treasury, and pays interest on its borrowings at a rate determined by the Secretary of the Treasury. 12 U.S.C. § 1720(d). GNMA then uses its mortgage sales to replenish its commitment authority, permitting additional purchases.

Since no separate fund is available, a judgment for appellant would have to be paid from these general funds upon which GNMA operates. According to 12 U.S.C. § 1722, any funds involved in the general operation of GNMA belong to the Treasury, since, as the section provides, "[a]ll of the benefits and burdens incident to the administration of the functions and operations of [GNMA] ... after allowance for related obligations of [GNMA], its prorated expenses, and the like, ... shall inure solely to the Secretary of the Treasury."

■ Appellant contends that a judgment on its claim would be an obligation relating to the administration of GNMA and therefore the kind of debt for which section 1722 makes allowance. We hold, however, that an award of compensatory damages for

---

3. The Secretary [of Housing and Urban Development] shall, in carrying out the provisions of this subchapter and subchapters ... of this chapter, be authorized, in his official capacity to sue and be sued in any court of competent jurisdiction, State or Federal.

Appellant also claimed jurisdiction and waiver of GNMA's immunity under 12 U.S.C. § 1723a(a) which reads in pertinent part as follows:

[Government National Mortgage Association] shall have power ... in its corporate name, to sue and to be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal.

3. The district court ruling was made before our decision in *Industrial Indemnity, Inc. v. Landrieu*, 615 F.2d 644 (5th Cir. 1980) and was based on an analysis of similar cases by the Ninth Circuit in *Marcus Garvey Square, Inc. v. Winston Burnet Construction Co.*, 595 F.2d 1126 (9th Cir. 1979) and *DSI Corp. v. Secretary of HUD*, 594 F.2d 177 (9th Cir. 1979).

4. This issue was resolved in *Industrial Indemnity* in the following pertinent language:

For Industrial Indemnity's claim to be against the Secretary, and therefore within the scope of the "sue and be sued" clause, as opposed to a suit against the United States that could not be brought in federal district court, any judgment for the plaintiff must be recoverable from funds in the possession and control of the Secretary that are severed from Treasury funds and Treasury control.

615 F.2d at 646.

breach of contract in this case would not be an obligation, such as payment of salaries of employees and administration of programs, for which general agency funds were budgeted.[5] Since this judgment would "expend itself in the public treasury," *Dugan v. Rank,* 372 U.S. 609, 610, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1947), *quoting Land v. Dollar,* 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1947), the district court correctly held that it was without jurisdiction to consider this case.

The Court of Claims properly has exclusive jurisdiction of a case of this kind and is the proper forum in which to hear this claim. Under the provisions of 28 U.S.C. § 1406(c), if a case within the exclusive jurisdiction of the Court of Claims is brought in the district court, that court may transfer it to the Court of Claims. We therefore remand to the district court with direction to transfer the case to the Court of Claims.

AFFIRMED AND REMANDED.

---

5. *Cf. United States v. Adams,* 634 F.2d 1261 (10th Cir. 1980) (payment of damages for alleged contractual breaches arising out of an approved contract does not fall within the general function of HUD in making housing available).