FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| CRYSTAL MONIQUE LIGHTFOOT; BEVERLY ANN HOLLIS-ARRINGTON, *Plaintiffs-Appellants*, v. CENDANT MORTGAGE CORPORATION, doing business as PHH Mortgage; FANNIE MAE; ROBERT O. MATTHEWS; ATTORNEYS EQUITY NATIONAL CORPORATION, *Defendants-Appellees*. | No. 10-56068 D.C. No. 2:02-cv-06568-CBM-AJW OPINION |

Appeal from the United States District Court
for the Central District of California
Consuelo B. Marshall, Senior District Judge, Presiding

Argued and Submitted
June 5, 2013—Pasadena, California

Filed October 2, 2014

Before: Stephen S. Trott and William A. Fletcher, Circuit
Judges, and Sidney H. Stein, District Judge.[*]

---

[*] The Honorable Sidney H. Stein, District Judge for the U.S. District
Court for the Southern District of New York, sitting by designation.

Opinion by Judge W. Fletcher;
Dissent by Judge Stein

## SUMMARY**

### Federal Question Jurisdiction

Affirming the district court's dismissal of claims against the Federal National Mortgage Association, or "Fannie Mae," the panel held that Fannie Mae's federal corporate charter confers federal question jurisdiction over claims brought by or against Fannie Mae.

Agreeing with the D.C. Circuit, the panel held that under *American Red Cross v. S.G.*, 505 U.S. 247 (1992), the sue-and-be-sued clause in the charter confers subject matter jurisdiction because the clause specifically mentions the federal courts.

Dissenting, District Judge Stein wrote that under a 1954 charter amendment, Fannie Mae's charter confers only corporate capacity to sue and be sued, and that subject matter jurisdiction must come from some other provision of law.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Thomas Ogden (argued), Law Offices of Thomas Ogden, Alhambra, California; Crystal Monique Lightfoot, West Hills, California, for Plaintiffs-Appellants.

Jonathan Hacker (argued), O'Melveny & Myers LLP, Washington, D.C.; Jan T. Chilton, Severson & Werson, San Francisco, California, for Defendants-Appellees.

**OPINION**

W. FLETCHER, Circuit Judge:

Plaintiffs Beverly Ann Hollis-Arrington and Crystal Monique Lightfoot appeal the district court's judgment dismissing their claims against the Federal National Mortgage Association ("Fannie Mae"). They argue that the district court lacked subject matter jurisdiction over their claims. We disagree. Under the rule announced in *American National Red Cross v. S.G.*, 505 U.S. 247 (1992), Fannie Mae's federal charter confers federal question jurisidiction over claims brought by or against Fannie Mae. We affirm the district court.

## I.  Background

This case is one of several brought by the plaintiffs following foreclosure proceedings initiated by Fannie Mae against Hollis-Arrington's home in West Hills, California. Hollis-Arrington first filed two suits in the United States District Court for the Central District of California, alleging numerous state- and federal-law claims against Fannie Mae

and other defendants. The district court dismissed both suits, and we affirmed on appeal. *Hollis-Arrington v. Cendant Mortg. Corp.*, 61 F. App'x 462 (9th Cir. 2003); *Hollis-Arrington v. Cendant Mortg. Corp.*, 61 F. App'x 463 (9th Cir. 2003).

Plaintiffs then filed the present suit in California state court, alleging state-law claims similar or identical to those in the two earlier federal suits. Fannie Mae removed to federal court, arguing that the sue-and-be-sued clause in its federal corporate charter conferred federal question subject matter jurisdiction. Plaintiffs filed a motion to remand, which the district court denied. The district court dismissed all of plaintiffs' claims as barred by res judicata and collateral estoppel. We initially affirmed in an unpublished disposition. *Lightfoot v. Cendant Mortg. Corp.*, 465 F. App'x 668 (9th Cir. 2012). We later withdrew that disposition, appointed pro bono counsel, and ordered the parties to brief whether Fannie Mae's federal charter granted the district court subject matter jurisdiction. *Lightfoot v. Cendant Mortg. Corp.*, No. 10-56068 (Apr. 13, 2012) (order withdrawing disposition).

## II. Discussion

### A. Fannie Mae's Charter

The sue-and-be-sued clause in Fannie Mae's charter authorizes Fannie Mae "to sue and be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal." 12 U.S.C. §1723a(a). We hold that this language confers federal question jurisdiction over claims brought by or against Fannie Mae. In so holding, we do not write on a clean slate. In *Red Cross*, the Supreme Court gave us a clear rule for construing sue-and-be-sued clauses for federally

chartered corporations.  The Court held that "a congressional charter's 'sue and be sued' provision may be read to confer federal court jurisdiction if, but only if, it specifically mentions the federal courts."  505 U.S. at 255.

The question in *Red Cross* was whether the American National Red Cross's federal charter conferred federal question jurisdiction over suits brought by or against the Red Cross.  The sue-and-be-sued clause in the Red Cross's charter authorized the Red Cross "to sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States."  *Id.* at 248.  The Court held that the clause conferred federal question jurisdiction.  *Id.* at 257.  Justice Scalia dissented for himself and three others.  He and his fellow dissenters would have held that the clause conferred only corporate capacity to sue and be sued, and that subject matter jurisdiction had to be conferred by some other provision of federal law.  *Id.* at 265 (Scalia, J., dissenting).

The Court based its holding on a line of cases, stretching back to *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738 (1824), that made clear that a sue-and-be-sued clause for a federally chartered corporation confers federal question jurisdiction if it specifically mentions federal courts. *Red Cross*, 505 U.S. at 252–56.  The Court in *Osborn* held, in an opinion by Chief Justice Marshall, that a clause authorizing the second Bank of the United States "to sue and be sued . . . in all state courts having competent jurisdiction and in any circuit court of the United States" conferred federal question jurisdiction.  22 U.S. (9 Wheat.) at 817–18.  Chief Justice Marshall distinguished *Osborn* from *Bank of the United States v. Deveaux*, 9 U.S. (5 Cranch) 61 (1809), in which the Court had held that the charter of the first Bank of the United States did *not* confer federal subject matter

jurisdiction because that bank's charter authorized the bank to "sue and be sued . . . in Courts of record," without specifying the federal courts. *Osborn*, 22 U.S. (9 Wheat.) at 817–18; *Deveaux*, 9 U.S. (5 Cranch) at 85. Chief Justice Marshall wrote that, in contrast to the first bank's charter, the second bank's charter could not have been "more direct and appropriate" in conferring federal question jurisdiction. *Osborn*, 22 U.S. (9 Wheat.) at 817.

Almost a century later, the Court held in *Bankers Trust Co. v. Texas & Pacific Railway*, 241 U.S. 295 (1916), that a federal corporate charter did not confer federal question jurisdiction when it authorized a railroad "to sue and be sued . . . in all courts of law and equity within the United States." *Id.* at 304–05. That language had "the same generality and natural import" as the language in *Deveaux* because it did not specifically mention the federal courts. *Id.* at 304; *see Red Cross*, 505 U.S. at 254. Then, in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447 (1942), the Court upheld federal question jurisdiction based on a federal charter authorizing the Federal Deposit Insurance Corporation to sue or be sued "in any court of law or equity, State or Federal." *Id.* at 455.

The Court wrote in *Red Cross* that these cases established a "rule" that would have been known to Congress at least as far back as 1942, when *D'Oench* was decided. *Red Cross*, 505 U.S. at 255–57, 259–60. When federal charters, like those of the Red Cross and of Fannie Mae, "expressly authoriz[e] the organization to sue and be sued in federal courts . . . the provision extends beyond a mere grant of general corporate capacity to sue, and suffices to confer federal jurisdiction." *Id.* at 257. As the Court of Appeals for the D.C. Circuit has already held, that rule resolves this case.

*See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust ex rel. Fed. Nat'l Mortg. Ass'n v. Raines*, 534 F.3d 779, 784 (D.C. Cir. 2008) (holding, based on Fannie Mae's charter, that federal question jurisdiction exists over suits brought by or against Fannie Mae).

Despite the specific reference to federal courts in Fannie Mae's sue-and-be-sued clause, our dissenting colleague contends that the clause does not confer federal question jurisdiction. Like Justice Scalia and his fellow dissenters in *Red Cross*, the dissent argues that the clause confers only corporate capacity to sue and be sued, and that subject matter jurisdiction must come from some other provision of federal law. Dissent at 23. The dissent relies on the phrase "court of competent jurisdiction" in the clause. Before 1954, Fannie Mae, like the Red Cross, had the statutory authority to "sue and be sued; complain and defend, in any *court of law or equity*, State or Federal." H.R. Rep. No. 83-1429, at 82 (1954) (emphasis added). In 1954, as one of many changes to Fannie Mae's charter, Congress amended Fannie Mae's sue-and-be-sued clause to authorize it "to sue and to be sued, and to complain and to defend, in any *court of competent jurisdiction*, State or Federal." Housing Act of 1954, Pub. L. No. 83-560, § 201, 68 Stat. 590, 620 (codified as amended at 12 U.S.C. § 1723a(a)) (emphasis added).

The dissent acknowledges that Fannie Mae's pre-1954 charter conferred federal question jurisdiction, but argues that Congress eliminated that jurisdiction by replacing the phrase "court of law or equity" with "court of competent jurisdiction." Dissent at 23–24. We disagree. Eliminating the charter's grant of federal question jurisdiction would have imposed a severe new restraint on Fannie Mae's ability to litigate in federal court. Under the general federal question

jurisdiction statute, 28 U.S.C. § 1331, Fannie Mae would have been restricted by the well-pleaded complaint rule. *See, e.g.*, *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9–10 (1983); *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). Given that Fannie Mae is often sued under state-law causes of action, § 1331 would have conferred jurisdiction in a relatively small number of cases. Diversity jurisdiction under 28 U.S.C. § 1332, if it existed at all, would have been unavailable in many, perhaps most, cases because Fannie Mae suits typically involve mortgage transactions to which there are multiple parties, often resulting in a lack of complete diversity. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

There is no indication that Congress intended to eliminate federal question jurisdiction in 1954 by replacing the phrase "court of law or equity" with the phrase "court of competent jurisdiction." Neither the House nor the Senate report on Fannie Mae's 1954 amendments so much as mentions the "court of competent jurisdiction" language. *See* H.R. Rep. No. 83-1429, at 19–24, 43–50; S. Rep. No. 83-1472, at 33, 74–75 (1954). Given the important practical effect of eliminating federal question jurisdiction under Fannie Mae's sue-and-be-sued clause, we should expect the House or the Senate to have said something if they intended a change of that sort. Instead, there was silence.

In our view, the most likely explanation for replacing the phrase "court of law or equity" with "court of competent jurisdiction" is that Congress was simply modernizing Fannie Mae's charter. At our founding and for many years thereafter, the federal court system and most state court systems had separate law and equity courts. By the middle of the 20th century, however, the federal courts and almost

every state had abandoned the law/equity division. *See* Leonard J. Emmerglick, *A Century of the New Equity*, 23 Tex. L. Rev. 244, 244 n.1 (1945). The Federal Rules of Civil Procedure merged law and equity in the federal courts in 1938. *Id.* By 1945, only five states continued to have separate law and equity courts. *Id.* At the time of the 1954 amendment, Fannie Mae's charter's reference to "court[s] of law or equity" had become an antiquarian relic with little relevance to the American legal system.

The change in Fannie Mae's sue-and-be-sued clause is best explained as getting rid of this anachronism, as Congress had recently done in other statutes. In 1948, in response to the Federal Rules of Civil Procedure's elimination of the law/equity distinction, Congress removed a number of references to "law or equity" in the statutes defining federal district court jurisdiction. *See* Act of June 25, 1948, Pub. L. No. 80-773, §§ 1332, 1343, 1345–46, 62 Stat. 869, 930–33; H.R. Rep. No. 80-3214, at A115, A121, A123 (1948). In 1954, as we discuss in more detail below, Congress exchanged "court of law or equity" for "court of competent jurisdiction" not just in Fannie Mae's charter, but also in the charters of the Federal Savings and Loan Insurance Corporation ("FSLIC") and the Home Loan Bank Board.

If Congress wanted to eliminate the grant of federal question jurisdiction from Fannie Mae's charter, it is highly unlikely that it would have done so in the way the dissent suggests. In 1954, Congress had no reason to think that replacing the phrase "court of law or equity" with the phrase "court of competent jurisdiction" would eliminate federal question jurisdiction under Fannie Mae's sue-and-be-sued clause. Supreme Court cases from *Deveaux* to *D'Oench* had put Congress on notice that a specific reference to the federal

courts was "necessary *and sufficient* to confer jurisdiction." *Red Cross*, 505 U.S. at 252 (emphasis added). The 1954 amendments, while using the new phrase "court of competent jurisdiction" in Fannie Mae's sue-and-be-sued clause, retained the specific reference to the federal courts. Congress would not have sought to eliminate federal question jurisdiction under Fannie Mae's sue-and-be-sued clause by retaining the very words the Court had recently held sufficient to *confer* such jurisdiction in *D'Oench*. *See Pirelli*, 534 F.3d at 786 ("If Congress in 1954 did not want to continue to confer federal jurisdiction in Fannie Mae cases, it logically would have omitted the word 'Federal' from the statute, not attempted a bank shot by adding the words 'of competent jurisdiction.'").

Congress's contemporaneous treatment of the FSLIC shows that it knew a foolproof method to eliminate federal question jurisdiction from a sue-and-be-sued clause. That method was to follow *Deveaux* and simply to omit the reference to federal courts. In 1954, the same year Congress amended Fannie Mae's charter, Congress eliminated federal question jurisdiction for the FSLIC by deleting language in its charter that had authorized suit "in any court of law or equity, State or Federal." Congress replaced it with language authorizing suit "in any court of competent jurisdiction in the United States." *See* H.R. Rep. No. 83-1429, at 90; S. Rep. No. 83-1472, at 121. Since eliminating the reference to federal courts in the FSLIC amendment eliminated federal question jurisdiction over FSLIC suits brought under its sue-and-be-sued clause, Congress had no reason also to insert the phrase "court of competent jurisdiction" to accomplish the same thing. *See Corley v. United States*, 556 U.S. 303, 314 (2009) ("[A] statute should be construed so that effect is

given to all its provisions, so that no part will be inoperative or superfluous . . . ." (internal quotation marks omitted)).

The dissent argues that our holding renders superfluous the phrase "court of competent jurisdiction."  Dissent at 19, 28.  We disagree.  As we explained above, the phrase served the purpose of eliminating an anachronistic reference to courts of law and equity.  But if we need an additional purpose for the phrase, it is not hard to find one.  In *Osborn*, the purpose of the phrase "in all State Courts having competent jurisdiction" was to emphasize that the clause did not authorize or require the exercise of subject matter jurisdiction by a state court with narrow, specialized jurisdiction.  *See* 22 U.S. (9 Wheat.) at 817.  Fannie Mae's sue-and-be-sued clause can easily be read to have the same purpose.  There was a general concern in the 1950s about the extent of federal authority to require state courts to hear cases brought pursuant to federal statutes.  In *Testa v. Katt*, 330 U.S. 386 (1947), the World War II-era federal Emergency Price Control Act required state courts to entertain civil suits for treble damages against merchants who charged a retail price exceeding the maximum set by federal law.  The Act specified that federal and state courts had concurrent jurisdiction.  Like Fannie Mae's charter, the Act authorized suit "in any court of competent jurisdiction."  *Id.* at 387 n.1. Rhode Island district and superior courts refused to hear a suit brought under the Act, contending that they were not obliged to hear a suit under a federal statute authorizing treble damages.  *Id.* at 388.  After determining that the state district and superior courts were courts "of competent jurisdiction" with "jurisdiction adequate and appropriate under established local law" to grant treble damages, the Court held in *Testa* that such courts were required to hear suits under the Act.  *Id.* at 394.

It was in this historical setting that Congress added the phrase "court of competent jurisdiction" to Fannie Mae's charter. Consistent with *Testa*, the phrase requires state courts of general or otherwise competent jurisdiction to hear claims brought by and against Fannie Mae. The phrase makes clear that state courts of specialized jurisdiction—such as family courts and small-claims courts—need not entertain suits that do not satisfy those courts' jurisdictional requirements. Similarly, the phrase also makes clear that the sue-and-be-sued clause does not require federal courts of specialized jurisdiction—such as bankruptcy courts—to hear suits falling outside those courts' jurisdiction. *Accord Pirelli*, 534 F.3d at 785.

Finally, the dissent points to several circuit court cases decided after 1954 that interpret the phrase "court of competent jurisdiction" the same way the dissent does. Dissent at 24 (citing *C.H. Sanders Co. v. BHAP Hous. Dev. Fund Co.*, 903 F.2d 114, 118 (2d Cir. 1990); *Lomas & Nettleton Co. v. Pierce*, 636 F.2d 971, 973 (5th Cir. 1981); *Bor-Son Bldg. Corp. v. Heller*, 572 F.2d 174, 181 (8th Cir. 1978); *Lindy v. Lynn*, 501 F.2d 1367, 1368 (3d Cir. 1974)). But all of these cases predate *Red Cross*. The only post-*Red Cross* cases cited by the dissent are district court decisions. Dissent at 25 & n.2.

## B.  Legislative History

Our dissenting colleague makes two arguments based on legislative history that deserve a focused response. First, the dissent points to the history of the 1954 amendments. The House Bill, which used the phrase "court of competent jurisdiction," was designed to effectuate a transformation of Fannie Mae from a government-owned corporation to a

privately owned, but still federally chartered, corporation. The Senate Bill, which retained the old phrase "in any court of law or equity," would not have changed the ownership of Fannie Mae.  The House Bill prevailed.  The dissent concludes that the addition of the phrase "court of competent jurisdiction" in the 1954 amendments, taken from the House Bill, was designed to help effectuate the privatizing purpose of the bill.

Second, the dissent points to a 1974 amendment to Fannie Mae's charter.  The amendment allowed Fannie Mae to change its principal place of business from the District of Columbia to the Virginia or Maryland suburbs, but specified that Fannie Mae would nonetheless remain a District of Columbia corporation "for purposes of jurisdiction." Housing and Community Development Act of 1974, Pub. L. No. 93-383, § 806(b), 88 Stat. 633, 727 (codified as amended at 12 U.S.C. § 1717(a)(2)).  The dissent argues that if the 1954 sue-and-be-sued clause confers federal question jurisdiction, there would have been no need to confer District of Columbia corporate status on Fannie Mae in 1974, and thereby to confer diversity jurisdiction over suits to which Fannie Mae is a party.

## 1. The 1954 Amendments

The dissent relies heavily on the fact that the 1954 amendments were part of a broad reform reducing the federal government's role in Fannie Mae.  The change to Fannie Mae's sue-and-be-sued clause, the dissent argues, must have furthered this "overriding purpose."  Dissent at 30.

The dissent is correct that the 1954 amendments sought to minimize the federal government's ownership and

operational role in Fannie Mae. But the 1954 amendments did not completely privatize Fannie Mae, which remained, even after 1954, a federally chartered corporation with specific statutory requirements for its corporate governance. Not every part of the 1954 amendment served Congress's "overriding purpose" of privatization, and there is no reason that the phrase "court of competent jurisdiction" must be understood as serving this purpose, and there is no evidence showing that the change to Fannie Mae's sue-and-be-sued clause was part of the move toward privatization. Whether federal courts have federal question jurisdiction over Fannie Mae cases has nothing to do with "[s]ubstituting private sources of funds for Government expenditures," the primary means by which the House sought to privatize Fannie Mae. H.R. Rep. No. 83-1429, at 2; *see id.* at 43–44. The House Report went into great detail explaining the provisions of the 1954 amendments designed to privatize Fannie Mae. It never once mentioned the change to Fannie Mae's sue-and-be-sued clause.

Even more telling is Congress's simultaneous use of the identical phrase, "court of competent jurisdiction," in contexts that had nothing to do with either Fannie Mae or privatization. In the same Act that amended Fannie Mae's charter, Congress amended the FSLIC's charter by replacing the phrase "court of law and equity" with the phrase "court of competent jurisdiction." Housing Act of 1954 § 501(1). Also in the same Act, Congress added the phrase "court of competent jurisdiction" to the statute governing the Home Loan Bank Board ("HLBB"). Housing Act of 1954 § 503(2). The change to the FSLIC's sue-and-be-sued clause was one of very few changes to the FSLIC's charter. *See* H.R. Rep. No. 83-1429, at 90–91; S. Rep. No. 83-1472, at 121–22. As we discussed above, Congress did eliminate federal question

jurisdiction for the FSLIC, but it did so by eliminating any mention of federal courts.  The change to the HLBB's sue-and-be-sued clause was unrelated to privatization.  Indeed, with respect to jurisdiction, Congress made clear that it wanted to *increase* the HLBB's access to federal courts. Both the House and Senate explained that they were providing the HLBB the "means . . . to enforce the laws and regulations under which Federal savings and loan associations operate."  H.R. Rep. No. 83-1429, at 27; S. Rep. No. 83-1472, at 43.  The Senate report specifically stated that HLBB "proceedings could be in the Federal judicial district in which the association is located."  S. Rep. No. 83-1472, at 43; *see also* H.R. Rep. No. 83-1429, at 27.

As a postscript to the 1954 amendments, in 1968 Congress split Fannie Mae into two corporations, Fannie Mae and the Government National Mortgage Association ("Ginnie Mae").  Housing and Urban Development Act of 1968, Pub. L. No. 90-448, § 801, 82 Stat. 476, 536 (1968) (codified as amended at 12 U.S.C. § 1716b).  Both Fannie Mae and Ginnie Mae remained federally chartered, but Fannie Mae became entirely privately owned and Ginnie Mae became entirely federally owned.  *See id.*  Yet Fannie Mae and Ginnie Mae kept precisely the same sue-and-be-sued clause, authorizing them both "to sue and be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal."  12 U.S.C. § 1723a.  If the phrase "court of competent jurisdiction" had been used in 1954 as part of an overall plan to privatize Fannie Mae and to limit its access to federal courts, Congress would not have used that same phrase in Ginnie Mae's charter.

### 2. The 1974 Amendment

The 1974 amendment to the Housing Act changed the sentence "[Fannie Mae] shall maintain its principal office in the District of Columbia and shall be deemed, for purposes of venue in civil actions, to be a resident thereof" to read, "[Fannie Mae] shall maintain its principal office in the District of Columbia *or the metropolitan area thereof* and shall be deemed, *for purposes of jurisdiction* and venue in civil actions, to be a District of Columbia corporation." Housing and Community Development Act of 1974 § 806(b) (emphasis added).

The dissent argues that this change shows that Congress, in light of the elimination of federal question jurisdiction effectuated by the 1954 amendment to Fannie Mae's sue-and-be-sued clause, sought to authorize diversity jurisdiction under 28 U.S.C. § 1332 over suits in which Fannie Mae was a party. If it were clear that the 1974 amendment was intended to confer diversity jurisdiction over Fannie Mae cases, this could suggest that Congress belatedly realized that it had eliminated federal question jurisdiction by its amendment to Fannie Mae's sue-and-be-sued clause, and now sought, twenty years later, to provide some basis for federal subject matter jurisdiction. *See* Dissent at 33–34. But we do not believe that this was the purpose of the 1974 amendment.

The "jurisdiction" to which the 1974 amendment refers is almost certainly not subject matter jurisdiction. The reference is almost certainly to personal jurisdiction. The purpose of the amendment was almost certainly to allow Fannie Mae to move its principal place of business out of the District of Columbia to the Virginia or Maryland suburbs, and at the same time to make clear that Fannie Mae would be

subject to general personal jurisdiction only in the District even if it moved its principal place of business into the suburbs.

A corporation, like an individual, is subject to specific jurisdiction in a forum when its activities in that forum have given rise to the suit. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011). A corporation is subject to general jurisdiction only where it is "essentially at home." *Id.* at 2851; *see Daimler AG v. Bauman*, 134 S. Ct. 746, 755–58 (2014). The two places where a corporation is "essentially at home" and therefore subject to general jurisdiction are its place of incorporation and its principal place of business. *Daimler*, 134 S. Ct. at 760. In the 1974 amendment, Congress specified that Fannie Mae would be "deemed" a District of Columbia corporation "for purposes of jurisdiction" and thus subject to general jurisdiction only in the District, despite the possibility that it might move its principal place of business to the suburbs. *See* 12 U.S.C. § 1717(a)(2)(B).

The legislative history of the 1974 amendment is consistent with this reading. The House subcommittee summarized the amendment as "provid[ing] that the principal office of FNMA be located in the District of Columbia metropolitan area, as well as in the District of Columbia, though for jurisdiction and venue purposes FNMA would be considered a District corporation." Subcomm. on Hous. of the Comm. on Banking and Currency, 93d Cong., Compilation of the Housing and Community Development Act of 1974, at 277 (Comm. Print 1974); *see also id.* at 379 (summarizing the amendment as "permit[ing] the principal office of FNMA to be located in the District of Columbia metropolitan area, as well as in the District of Columbia,

though for jurisdiction and venue purposes FNMA is to be considered a District resident"). The legislative history contains no mention of the possibility that the amendment was intended to authorize diversity jurisdiction based on newly conferred District of Columbia citizenship for Fannie Mae. Rather, the legislative history strongly suggests that the amendment was intended to allow Fannie Mae to move its principal place of business to the suburbs without effecting any change to the place where it would be subject to general jurisdiction. That is, Fannie Mae could move to the suburbs, "though for jurisdiction and venue purposes [it] would be considered a District corporation." *Id.* at 277.

The dissent cites two other statutes as examples of Congress creating diversity jurisdiction for federally chartered corporations. Dissent at 34–35. But both statutes support reading the 1974 Fannie Mae amendment as referring to personal rather than subject matter jurisdiction. Both statutes expressly refer to the corporation a "citizen" of the relevant forum. *See* 7 U.S.C. § 941(c) ("The telephone bank . . . shall, for the purposes of jurisdiction and venue, be deemed a *citizen* and resident of the District of Columbia." (emphasis added)); 28 U.S.C. § 1348 ("All national banking associations shall, for the purposes of all other actions by or against them, be deemed *citizens* of the States in which they are respectively located." (emphasis added)). Federal law defines diversity jurisdiction in terms of citizenship, 28 U.S.C. § 1332(a), so when Congress sought to authorize diversity jurisdiction in these two statutes, it used the word "citizen." Unlike these two statutes, Fannie Mae's 1974 amendment does not use the word "citizen." Rather, it provides only that Fannie Mae is a "District of Columbia corporation." 17 U.S.C. § 1717(a)(2)(B).

Conclusion

We hold that the sue-and-be-sued clause in Fannie Mae's federal charter confers federal question jurisdiction over suits in which Fannie Mae is a party. Accordingly, we hold that the district court had subject matter jurisdiction over plaintiffs' claims. We affirm the district court's dismissal of plaintiffs' claims for the reasons stated in our previous unpublished disposition. *Lightfoot*, 465 F. App'x at 669.

**AFFIRMED.**

STEIN, District Judge, dissenting:

Fannie Mae's charter gives the company the power "to sue and to be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal." 12 U.S.C. § 1723a(a). Unlike the corporate charter at issue in *American National Red Cross v. S.G.*, 505 U.S. 247 (1992), Fannie Mae's sue-and-be-sued clause contains a proviso—the phrase "of competent jurisdiction." The majority offers a few potential readings of this phrase, but each of these constructions effectively renders the proviso superfluous. But the phrase "of competent jurisdiction" is not a potted plant; it must mean something. With the proviso included, Fannie Mae's sue-and-be-sued clause does not confer automatic federal subject matter jurisdiction over any action to which Fannie Mae is a party; jurisdiction must arise from some other source. I therefore respectfully dissent.

## I. The *Red Cross* Default Rule

Congress has used the sue-and-be-sued clauses of federal corporations to achieve multiple goals.  Most obviously, these clauses make clear that the federal entity—as opposed to, for example, its administrator—has the ability to engage in litigation.  *See Fed. Hous. Admin. v. Burr*, 309 U.S. 242, 245 (1940).  Congress also uses these clauses to confirm that a federally created entity cannot invoke sovereign immunity.  *See id.* at 249.  And Congress may also draft a sue-and-be-sued clause to confer federal jurisdiction upon any suit to which the federal corporation is a party.

A hoary line of U.S. Supreme Court precedent sets forth how Congress may achieve this final goal.  The Court first considered this question in *Bank of the United States v. Deveaux*, 9 U.S. (5 Cranch) 61 (1809), with Chief Justice Marshall writing.  The corporation in that case was the first Bank of the United States, and its charter empowered the Bank "to sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in courts of record, or any other place whatsoever."  *Id.* at 85.  The Court concluded that this section merely granted the Bank the capacity to sue.  It did not "enlarge the jurisdiction of any particular court."  *Id.*

Two lines of reasoning supported this holding.  First, the Court concluded that automatic access to the federal courts did not necessarily follow from a generic authorization to sue and be sued.  *See id.* at 85–86.  Second, a different section of the Bank's charter explicitly provided for federal jurisdiction in certain suits against the president and directors of the Bank.  *See id.* at 86.  "This," the Chief Justice announced, "evinces the opinion of congress, that the right to sue does not

imply a right to sue in the courts of the union, unless it be expressed." *Id.*

Congress seemingly responded to the Court's ruling when it chartered the second Bank of the United States. The relevant section of the second Bank's charter gave it the right "to sue and be [sued], plead and be impleaded, answer and be answered, defend and be defended, in all State Courts having competent jurisdiction, and in any Circuit Court of the United States."[1] *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 817 (1824). The *Osborn* Court, once again through Chief Justice Marshall, determined that unlike the language at issue in *Deveaux*, the second Bank's charter unambiguously conferred federal subject matter jurisdiction. *Id.* at 817–18.

*Deveaux* and *Osborn* together established a default rule for determining whether a federal corporation's sue-and-be-sued clause confers federal subject matter jurisdiction. As the Supreme Court summarized in *American National Red Cross v. S.G.*, 505 U.S. 247 (1992): "a congressional charter's 'sue and be sued' provision may be read to confer federal court jurisdiction if, but only if, it specifically mentions the federal courts." *Id.* at 255.

The clause at issue in that case gave the Red Cross the power "to sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States." *Id.*

---

[1] At the time the second Bank was chartered, the circuit courts had both original and appellate jurisdiction over certain civil actions. *See Am. Nat'l Red Cross v. S.G.*, 505 U.S. 247, 256 n.8 (1992); Richard H. Fallon, Jr. et al., Hart and Wechsler's The Federal Courts and the Federal System 22, 30 n.65 (6th ed. 2009).

at 248. This language went beyond the general authorization of *Deveaux*. *See id.* at 256–57. In addition, the Red Cross's clause was "in all relevant respects identical" to a charter provision that the Court held to confer jurisdiction in *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.*, 315 U.S. 447 (1942). *See Red Cross*, 505 U.S. at 257. Importantly, Congress amended the relevant provision of the Red Cross's charter just five years after *D'Oench* was decided. *See id.* at 260. The plain language and statutory history together compelled the conclusion that the Red Cross's charter gave federal courts subject matter jurisdiction over suits to which the company was a party.

*Red Cross* provides the Supreme Court's most recent pronouncement on the jurisdictional implications of federal sue-and-be-sued clauses. However, *Red Cross* did not announce any new rule of law. *See id.* at 255–57. Rather, the Court simply restated the "rule established" in the Court's twin decisions of *Osborn* and *Deveaux*. *Id.* at 257. *Red Cross* thus did not announce a magic-words test that ends all inquiry the moment we come across the word "federal"; it restated a default rule to assist Congress and the courts in writing and interpreting sue-and-be-sued clauses.

Recognizing that the rule in *Red Cross* is a default has an important implication—it means that Congress can draft exceptions to the rule. When Congress creates corporations, it "has full authority to make such restrictions on the 'sue and be sued' clause as seem to it appropriate or necessary." *Fed. Hous. Admin. v. Burr*, 309 U.S. 242, 249 (1940); *cf. Fed. Sav. & Loan Ins. Corp. v. Ticktin*, 490 U.S. 82, 86–87 & n.5 (1982) (Congress can write provisos that limit "broad grant[s] of federal jurisdiction."). Counsel for Fannie Mae nicely summarized this point at oral argument: "If Congress says

you can sue or be sued in federal court, that is at least a profoundly strong default rule . . . and you'd have to find something else in the statute that says even though we want you to sue in federal court, we don't really mean it." Oral Arg. Rec. at 28:58.

*Red Cross* did not tie Congress' hands, preventing it from crafting sue-and-be-sued clauses as it deems fit. We cannot ignore the "of competent jurisdiction" proviso; we must determine what it means. The *Red Cross* default rule gives us the starting point for our analysis of Fannie Mae's sue-and-be-sued clause. The Supreme Court's application of the default rule over the past two centuries defines the interpretive tools for our analysis. Using this approach, Fannie Mae's sue-and-be-sued clause allows for only one reading—a court must have an independent basis of jurisdiction to hear a suit involving that company.

## II. The Plain Language of Fannie Mae's Sue-And-Be-Sued Clause

As noted, Fannie Mae's charter grants the company the power "to sue and to be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal." 12 U.S.C. § 1723a(a). Absent the "of competent jurisdiction" proviso, this clause would clearly confer jurisdiction on the federal courts. *See D'Oench*, 315 U.S. at 455. The true question before this Court, then, is what the proviso means. On its face, the phrase "of competent jurisdiction" "look[s] to outside sources of jurisdictional authority." *Califano v. Sanders*, 430 U.S. 99, 106 n.6 (1977). When "of competent jurisdiction" modifies "State" courts, the proviso instructs us to look for a jurisdictional hook in that state's law. *See Osborn*, 22 U.S. (9 Wheat.) at 817. The proviso performs the

same function when it modifies "Federal" courts. No court—state or federal—is competent to hear a suit involving Fannie Mae unless it has subject matter jurisdiction by some means other than Fannie Mae's sue-and-be-sued clause.

Congress has utilized substantively identical language in other sue-and-be-sued clauses, and the courts of appeals have overwhelmingly agreed that an "of competent jurisdiction" proviso requires an alternative basis of jurisdiction. Fannie Mae has directed our attention in particular to the sue-and-be-sued provision that authorizes the Administrator of the Federal Housing Administration "to sue and be sued in any court of competent jurisdiction, State or Federal." 12 U.S.C. § 1702. A long line of cases has held that this statute does not confer federal jurisdiction. *See C.H. Sanders Co. v. BHAP Hous. Dev. Fund Co.*, 903 F.2d 114, 118 (2d Cir. 1990); *Lomas & Nettleton Co. v. Pierce*, 636 F.2d 971, 973 (5th Cir. 1981); *Bor-Son Bldg. Corp. v. Heller*, 572 F.2d 174, 181 (8th Cir. 1978); *Lindy v. Lynn*, 501 F.2d 1367, 1368 (3d Cir. 1974). This very Circuit has followed the non-jurisdictional interpretation of the statute, albeit in dicta. *See Munoz v. Small Business Admin.*, 644 F.2d 1361, 1365 n.3 (9th Cir. 1981). The majority criticizes my reliance on these cases because they were handed down prior to *Red Cross*, which, as set forth above, announced no new rule of law. But if the majority seeks post-*Red Cross* cases that agree with this dissent that an independent basis is needed to support federal subject matter jurisdiction for Fannie Mae, we need only look to the numerous district court opinions in this Circuit that the majority overrules with its decision. As district judge Dean Pregerson recently summarized, "courts in this circuit appear to have uniformly reached the [] conclusion" that Fannie Mae's charter does not confer federal subject matter

jurisdiction. *Fed. Nat'l Mortgage Ass'n v. Moreno*, No. 14-CV-2984, 2014 WL 1922955, at *2 (C.D. Cal. May 14, 2014) (collecting cases). Judge Pregerson concurred with that significant consensus.**[2]** *See id.*

In sum, when Congress has included "of competent jurisdiction" provisos in sue-and-be-sued clauses, courts have honored Congress' intent and ruled these clauses to not confer subject matter jurisdiction. Fannie Mae's sue-and-be-sued clause should be no different.

---

**[2]** The district courts in our circuit are not alone in their consensus that Fannie Mae's sue-and-be-sued clause does not confer federal subject matter jurisdiction. Indeed, this appears to be the position of the majority of those district courts in all circuits that have written on this issue. *See Warren v. Fed. Nat'l Mortg. Ass'n*, No. 14-CV-0784, 2014 WL 4548638 (N.D. Tex. Sept. 15, 2014); *Kennedy v. Fed. Nat'l Mortg. Ass'n*, No. 13-CV-203, 2014 WL 3905593, at *5–6 (E.D.N.C. Aug. 11, 2014); *Fed. Nat'l Mortg. Ass'n v. Davis*, 963 F. Supp. 2d 532, 537–43 (E.D. Va. 2013); *Carter v. Watkins*, No. 12-CV-2813, 2013 WL 2139504, at *3–4 (D. Md. May 14, 2013); *Fed. Home Loan Bank of Indianapolis v. Banc of Am. Mortg. Sec., Inc.*, No. 10-CV-1463, 2011 WL 2133539, at *1–2 (S.D. Ind. May 25, 2011) (construing the FHLB's substantively identical sue-and-be-sued clause); *Fed. Home Loan Bank of Atlanta v. Countrywide Sec. Corp.*, No. 11-CV-489, 2011 WL 1598944, at *3 (N.D. Ga. Apr. 22, 2011) (construing FHLB charter); *Fed. Home Loan Bank of Chicago v. Banc of Am. Funding Corp.*, 760 F. Supp. 2d 807, 809–10 (N.D. Ill. 2011) (construing FHLB charter); *Rincon Del Sol, LLC v. Lloyd's of London*, 709 F. Supp. 2d 517, 522–25 (S.D. Tex. 2010); *Knuckles v. RBMG, Inc.*, 481 F. Supp. 2d 559, 562–65 (S.D.W. Va. 2007). Those district courts that have sided with the majority have done so without an extended discussion of this question. *See Fed. Home Loan Bank of Boston v. Ally Fin., Inc.*, No. 11-CV-10952, 2012 WL 769731, at *1–3 (D. Mass. Mar. 9, 2012); *In re Fannie Mae 2008 Sec. Litig.*, No. 08 Civ. 7831, 2009 WL 4067266, at *3 (S.D.N.Y. Nov. 24, 2009); *Grun v. Countrywide Home Loans, Inc.*, No. 03-CV-0141, 2004 WL 1509088, at *2 (W.D. Tex. July 1, 2004).

The majority offers two alternative readings for the "of competent jurisdiction" proviso. Neither is persuasive. First, the majority suggests that the proviso was part of Congress' drive to modernize the U.S. Code in the mid-20th century. During this period, law and equity were merged in the federal courts and in a majority of the states. *See* Fed. R. Civ. P. 2. The merger largely rendered references to "courts of law and equity" into historical curiosities. As the majority correctly points out, when Congress amended title 28 of the U.S. Code, it cleaned up these references in the sections that confer jurisdiction on the district courts. Congress went about its task expeditiously—it simply deleted references to courts of law or equity.[3] Congress did not replace these phrases with new references to "courts of competent jurisdiction" for a singularly valid reason. As explained above, the phrase "of competent jurisdiction" signals that the section containing that phrase will not also harbor a grant of jurisdiction. It would make no sense to include this proviso in a section designed to confer jurisdiction.

Next, the majority offers that the "of competent jurisdiction" proviso could be read to emphasize that state and federal courts of specialized jurisdiction need not hear cases involving Fannie Mae purely on the basis of its sue-and-be-sued clause. There are two flies in the ointment of this reading.

---

[3] *Compare* 28 U.S.C. § 41(1) (1946), *with* Act of June 25, 1948, ch. 646, §§ 1331, 1332, 1345, 62 Stat. 869, 930, 933 (deleting reference to "suits of a civil nature, at common law or in equity"); *compare* 28 U.S.C. § 41(7), (14) (1946), *with* ch. 646, §§ 1338, 1343, 62 Stat. at 931–32 (deleting references to "suits at law or in equity"); *and compare* 28 U.S.C. § 41(20) (1946), *with* ch. 646, § 1346, 62 Stat. at 933 (deleting reference to "a court of law, equity, or admiralty").

First, the majority relies on the *Osborn* Court's interpretation of the second Bank's charter, which authorized the Bank to sue "in all State Courts having competent jurisdiction." *Osborn*, 22 U.S. (9 Wheat.) at 817. According to the majority, this phrase ensured that "a state court with narrow, specialized jurisdiction" was not required to hear any case involving the Bank. Majority Op. at 11. This is an unduly narrow reading of the clause. In fact, the second Bank's charter made clear that *no* state court was required to hear a suit involving the Bank, unless that court had a free-standing basis for jurisdiction. This reading accords with the understood relationship between Congress and the state courts around the time the second Bank was chartered: "I hold it to be perfectly clear, that Congress *cannot confer jurisdiction* upon any Courts, but such as exist under the constitution and laws of the United States, although the State Courts may exercise jurisdiction on cases authorized by the laws of the State, and not prohibited by the exclusive jurisdiction of the federal Courts." *Houston v. Moore*, 18 U.S. (5 Wheat.) 1, 27–28 (1820) (emphasis added). The "of competent jurisdiction" proviso serves precisely the same purpose in Fannie Mae's charter—the only difference is that the proviso applies to the courts of the states and the federal government.

Second, *Red Cross* forecloses the majority's construction of the "of competent jurisdiction" proviso. The Red Cross's charter gave that organization the power "to sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States." *Red Cross*, 505 U.S. at 248. In his dissenting opinion, Justice Scalia argued that if this sue-and-be-sued clause must confer federal jurisdiction, it must confer jurisdiction on *all* the federal courts, including those of specialized jurisdiction. *See id.* at 267 (Scalia, J.,

dissenting). The Court rejected this approach and held that the Red Cross's charter confers automatic jurisdiction only in the district courts—today, the sole federal courts of broad original jurisdiction. *See id.* at 256 n.8 (majority opinion). *Red Cross* therefore demonstrates that Congress does not need an "of competent jurisdiction" proviso to ensure that Fannie Mae will not foist itself upon federal courts of specialized jurisdiction. The majority's reading of the proviso would render it entirely superfluous.

The majority claims that *Testa v. Katt*, 330 U.S. 386 (1947), provides an historical backdrop for its interpretation of the sue-and-be-sued clause. This is an interesting hypothetical, but one without relevance to the issue presented in this case. *Testa* restated the uncontroversial proposition that state courts cannot refuse to hear federal causes of action when those courts entertain similar state law causes of action. *See id.* at 394; *see also, e.g.*, *Haywood v. Drown*, 556 U.S. 729, 735–36 (2009). But Congress did not give Fannie Mae a proprietary cause of action when it amended the company's charter in 1954. When Fannie Mae sues or is sued, the cause of action must derive from a separate realm of federal law or, more likely, from state law. *See, e.g.*, *Welch v. Burton*, 252 S.W.2d 411, 413 (Ark. 1952) (Fannie Mae joined as defendant in quiet title action); *Malcolm MacDowell & Assocs. v. Ecorse-Lincoln Park Bank*, 38 N.W.2d 921, 921–22 (Mich. 1949) (Fannie Mae sued for breach of a mortgage-related contract). *Testa* does not evidence a mid-century climate of fear that federal *entities* would be denied access to state courts, especially in cases touching on state property and mortgage law.

The *Red Cross* default rule does not allow us to ignore the "of competent jurisdiction" proviso—it must mean

something. The only natural reading of this phrase instructs us to look for a source of jurisdiction outside of Fannie Mae's sue-and-be-sued clause.

## III.   The Legislative Context of Fannie Mae's Sue-And-Be-Sued Clause

Looking beyond the plain language of Fannie Mae's sue-and-be-sued clause, the history of Congress' amendments to this statute reinforces the conclusion that the clause does not confer federal subject matter jurisdiction.

### A. The 1954 amendment

Prior to 1954, Fannie Mae's sue-and-be-sued clause gave it the power "[t]o sue and be sued, complain and defend, in any court of law or equity, State or Federal." Nat'l Housing Act, ch. 847, § 301(c)(3), 48 Stat. 1246, 1253 (1934). This clause inarguably gave Fannie Mae access to the federal courts. *See D'Oench*, 315 U.S. at 455. But knowing this, Congress in 1954 struck the language "in any court of law or equity," and replaced it with "in any court of competent jurisdiction." It is a basic tenet of statutory interpretation that "[w]hen Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995). Indeed, the Supreme Court in *Red Cross* reinforced the importance of this canon in the context of sue-and-be-sued clauses. *See Red Cross*, 505 U.S. at 260. Congress thus emphasized the non-jurisdictional implications of the "of competent jurisdiction" proviso by adding it to a previously jurisdiction-conferring statute.

Congress' motivation and method in amending Fannie Mae's charter have proved obscure to some. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust ex rel. Fed. Nat'l Mortg. Ass'n v. Raines*, 534 F.3d 779, 786–87 (D.C. Cir. 2008). It is true that the legislative history behind the 1954 amendment does not expressly discuss the addition of the "of competent jurisdiction" proviso. But the legislative history does reveal that Congress intended to reduce the footprint of the federal government in the national housing market. Congress' amendment to Fannie Mae's sue-and-be-sued clause was simply one facet of this overriding purpose.

The 1954 Act was prompted by President Eisenhower's desire to "develop a new and revitalized housing program better adapted to current requirements, which would clearly identify the proper role of the Federal Government in the housing field and outline more economical and effective means for improving the housing conditions of our people." H.R. Rep. No. 83-1429, at 1 (1954). As the House Committee on Banking and Currency put it, one of the Act's "basic objectives" was "[s]ubstituting private sources of funds for Government expenditures whenever possible, especially in connection with the provision of a secondary market for home mortgages." *Id.* at 2.

The House passed H.R. 7839—a version of the 1954 Act that would dramatically remake Fannie Mae. Pursuant to H.R. 7839, Fannie Mae would be dissolved and rechartered "with substantial changes in its authority and with provision for the eventual substitution of private capital for Government investment in its secondary market operations." H.R. Rep. No. 83-1429, at 18. The new Fannie Mae would issue capital stock to the Secretary of the Treasury and convertible bonds to private investors. *See id.* at 18–19.

Once the capital stock owned by the Secretary was retired, the convertible bonds could be exchanged for common stock and Fannie Mae could issue more common stock directly to the public.  *See id.* at 18–19, 43–45.  Notably for our purposes, the House bill included the "of competent jurisdiction" proviso in Fannie Mae's amended corporate charter. *See id.* at 89–90.

The Senate Committee on Banking and Currency strongly disagreed with the House's treatment of Fannie Mae.  That Committee did not believe that "the testimony and facts presented to it warrant[ed] the sweeping action contained in" the House bill.  S. Rep. No. 83-1472, at 33 (1954).  The Senate proposed only minor changes to Fannie Mae's then-existing corporate authority. *See id.* at 74–75.  Importantly, the Senate version of H.R. 7839 did not include the "of competent jurisdiction" proviso. *See id.* at 121.

The conference committee roundly rejected the Senate's approach and adopted the House's version of the Act. *See* Conf. Rep. No. 83-2271, at 25–35 (1954).  The final version of the law included the Treasury-to-private capitalization path. *See* Housing Act of 1954, Pub. L. No. 83-560, § 201, 68 Stat. 590, 613–15.  It also provided that once this capital conversion was complete, Fannie Mae's administrative parent would request that Congress turn Fannie Mae over entirely to its private owners. *See id.*, 68 Stat. at 615.  It also included,

as we know, the "of competent jurisdiction" proviso.[4] *See id.* at 620.

In sum, the non-jurisdictional reading of the 1954 sue-and-be-sued clause meshes comfortably with Congress' overall intention when enacting the Housing Act of 1954. Congress intended to put Fannie Mae on a path that would eventually take the federal government out of the secondary mortgage market. As part of this process, Congress removed Fannie Mae's jurisdiction-granting sue-and-be-sued clause and elected the default option for federally chartered corporations—that they do not automatically gain access to the federal courts, unless the government owns more than half of the corporation's capital stock.[5] After Congress passed the 1954 Act, Fannie Mae would still have access to the federal

---

[4] The 1954 Act inserted an "of competent jurisdiction" proviso into the sue-and-be-sued clauses of two other entities—the Federal Savings and Loan Insurance Corporation and the Home Loan Bank Board (in the context of Board actions to enforce its regulations of savings and loan institutions). *See* Pub. L. No. 83-560, §§ 501(1), 503(2), 68 Stat. at 633, 635. Congress made the interpretive task concerning these two clauses easier, since it did not include a specific reference to federal courts. Neither of these sue-and-be-sued clauses confers automatic federal jurisdiction.

[5] As a consequence of the Supreme Court's decision in *Osborn*, "a suit by or against a corporation of the United States is a suit arising under the laws of the United States." *Pac. R.R. Removal Cases*, 115 U.S. 1, 11 (1885) (citing *Osborn*, 22 U.S. (9 Wheat.) at 817–28). The district courts thus have jurisdiction over suits by or against federally chartered corporations under 28 U.S.C. § 1331, at least in theory. *See id.* at 14; *see also Red Cross*, 505 U.S. at 251. In 1925, Congress limited this ground of jurisdiction so that only corporations where the government owns more than half of the capital stock could benefit from it. *See* Act of Feb. 13, 1925, ch. 229, § 12, 43 Stat. 936, 941 (codified as amended at 28 U.S.C. § 1349).

courts purely on the basis of its federal charter until the Treasury disentangled itself from the corporation. At that point, the government would no longer own more than half of the corporation's capital stock, Fannie Mae's administrator would request that the company be completely turned over to its private owners, and Fannie Mae would be in the position of every other federally chartered corporation that does not receive the special treatment of a jurisdiction-conferring sue-and-be-sued clause. *See* Paul E. Lund, *Federally Chartered Corporations and Federal Jurisdiction*, 36 Fla. St. U. L. Rev. 317, 334–35 (2009) (calling the number of corporations with automatic access to federal courts through their sue-and-be-sued clauses "a select group" and a "handful").

Although Congress did not speak specifically to its intent in amending Fannie Mae's sue-and-be-sued clause, it did not have to. Congress' intent for the Housing Act of 1954—to place the government and Fannie Mae on paths that would ultimately diverge—was clear. The amendment to Fannie Mae's sue-and-be-sued clause was part and parcel of this overarching intendment.

## B.  The 1974 amendment

Congress returned to Fannie Mae's corporate charter in 1974 to once again amend the company's ability to gain access to the federal courts. This amendment did not touch on the sue-and-be-sued clause, but it affects our interpretation of that portion of Fannie Mae's charter. If a separate portion of Fannie Mae's charter explicitly speaks to jurisdiction, this militates against a jurisdictional reading of the sue-and-be-sued clause. *See Deveaux*, 9 U.S. (5 Cranch) at 86.

Prior to 1974, both Fannie Mae and its sister corporation, Ginnie Mae (formally titled the Government National Mortgage Corporation), were required to "maintain [their] principal office in the District of Columbia and shall be deemed, for purposes of venue in civil actions, to be a resident thereof." Housing and Urban Development Act of 1968, Pub. L. No. 90-448, § 802(c)(3), 82 Stat. 476, 536, 537. Then, in the Housing and Community Development Act of 1974, Congress amended this clause to provide that Fannie Mae "shall be deemed, for purposes of *jurisdiction* and venue in civil actions, to be a District of Columbia corporation." Pub. L. No. 93-383, tit. VIII, § 806(b), 88 Stat. 633, 727 (codified at 12 U.S.C. § 1717(a)(2)(B)) (emphasis added). Congress did not make a parallel amendment to the corporate charter of Ginnie Mae, which had no capital stock and was "in the Department of Housing and Urban Development." 12 U.S.C. § 1717(a)(2)(A).

By adding the term "jurisdiction," Congress intended to allow Fannie Mae to access the federal courts via diversity jurisdiction pursuant to 28 U.S.C. § 1332. Section 1332 deems a corporation a citizen "of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c)(1). But federally chartered corporations are not "citizens" of any "State" for the purposes of section 1332. *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 306 (2006); *Bankers' Trust Co. v. Tex. & P. Ry. Co.*, 241 U.S. 295, 309–10 (1916); *Hancock Fin. Corp. v. Fed. Sav. & Loan Ins. Corp.*, 492 F.2d 1325, 1329 & n.4 (9th Cir. 1974). Recognizing this fact, Congress has filled the statutory gap on a few occasions by deeming specific corporations or classes of corporations to be citizens of the states in which they are located. *See* Act of Mar. 3, 1887, ch. 373, § 4, 24 Stat. 552, 554 (codified as amended at

28 U.S.C. § 1348) ("[A]ll national banking associations established under the laws of the United States shall, for the purposes of all actions by or against them . . . be deemed citizens of the States in which they are respectively located . . . ."); *see also* 7 U.S.C. § 941(c) ("The telephone bank . . . shall, for the purposes of jurisdiction and venue, be deemed a citizen and resident of the District of Columbia."). The 1974 amendment to Fannie Mae's charter is another example of this type of statute.

Fannie Mae would have no use for diversity jurisdiction if it could enter the federal courts pursuant to its sue-and-be-sued clause. The latter basis of jurisdiction does not contain an amount-in-controversy requirement, a complete-diversity requirement, or a forum-defendant rule. It is also not limited by the well-pleaded complaint rule. *See Red Cross*, 505 U.S. at 258. If Fannie Mae's sue-and-be-sued clause confers subject matter jurisdiction, then Congress amended the company's charter in 1974 for no reason whatsoever. *See Hancock*, 492 F.2d at 1328–29. The absence of any change to Ginnie Mae's charter confirms this interpretation of the Fannie Mae amendment. Ginnie Mae had no use for diversity jurisdiction whatsoever—it had plenary access to the federal courts as an agency of the federal government. *See* 28 U.S.C. §§ 1345, 1346.

The majority believes that the word "jurisdiction" in the 1974 amendment refers only to personal jurisdiction, not subject matter jurisdiction. A natural reading of the statute does not lead to this result. When Congress dubbed Fannie Mae "a District of Columbia corporation," it employed a phrase with a universally understood meaning. Just as "a Delaware corporation" is an entity incorporated under the laws of that state, *see, e.g.*, *Eldridge v. Richfield Oil Corp.*,

364 F.2d 909, 909 (9th Cir. 1966), "a District of Columbia corporation" is one that has been incorporated under the laws of the District.  Section 1332 fills in the rest, making that District of Columbia corporation a District citizen, and therefore eligible for diversity jurisdiction.  *See* 28 U.S.C. § 1332(c)(1), (e).  Congress' designation of the District as the effective place of Fannie Mae's incorporation also makes Fannie Mae subject to general jurisdiction—that is, personal jurisdiction—in the District's courts.  *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014).  But the 1974 amendment cannot be cabined so that it legislates personal jurisdiction, and personal jurisdiction alone.

The plain language of the 1974 amendment shows that Congress intended to give Fannie Mae access to the federal courts by diversity jurisdiction.  Since we cannot presume that Congress amends statutes with frivolous intent, it follows that Fannie Mae must have needed this jurisdictional hook. Congress' pronouncement confirms that Fannie Mae's sue-and-be-sued clause does not confer federal jurisdiction.

## IV.     Conclusion

The Supreme Court's cases interpreting sue-and-be-sued clauses, culminating with *Red Cross*, have defined the tool box we are to use in examining Fannie Mae's charter.  All of the interpretive techniques point in a single direction—that the "of competent jurisdiction" proviso added to Fannie Mae's charter demands that the company come up with some point of entry to the federal courts other than its status as a federally chartered corporation.  I respectfully dissent.